IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, STATE OF ALABAMA, STATE OF ALASKA, STATE OF ARKANSAS, STATE OF GEORGIA, STATE OF INDIANA, STATE OF IOWA, STATE OF KANSAS, COMMONWEALTH OF KENTUCKY, STATE OF MISSISSIPPI, STATE OF MISSOURI, STATE OF NEBRASKA, STATE OF OHIO, STATE OF SOUTH CAROLINA, STATE OF SOUTH DAKOTA, STATE OF UTAH, COMMONWEALTH OF VIRGINIA, STATE OF WEST VIRGINIA,<br><br>*Plaintiffs*,<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; CHARLOTTE A. BURROWS, in her official capacity as Chair of the Equal Employment Opportunity Commission; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, in his official capacity as Attorney General of the United States; and KRISTEN CLARKE, in her official capacity as Assistant Attorney General for Civil Rights at the United States Department of Justice,<br><br>*Defendants*. | Civil Action No. 3:24-cv-00224<br>Judge Charles E. Atchley, Jr.<br>Magistrate Judge Debra C. Poplin |

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR A § 705 STAY AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

    I.    Plaintiffs Are Likely to Succeed on the Merits of Their Challenge ............................... 2

        A.  Plaintiffs' claims are justiciable. ........................................................................ 2

        B.  The Enforcement Document exceeds EEOC's statutory authority. .................. 6

        C.  The Enforcement Document violates the Constitution. .................................... 8

    II.   The Enforcement Document is arbitrary and capricious. ............................................. 8

    III.  Plaintiffs Will Be Irreparably Harmed Absent Injunctive Relief. ................................. 9

    IV.  The Remaining Factors Favor Preliminary Relief. ........................................................ 9

    V.   The APA and Equity Support Entry of the State's Requested Relief. ........................ 10

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Ayissi-Etoh v. Fannie Mae*,
   712 F.3d 572 (D.C. Cir. 2013) .................................................................................... 5

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) ........................................................................................... 6, 7, 8

*City of Boerne v. Flores*,
   521 U.S. 507 (1997) ...................................................................................................... 8

*Czyzewski v. Jevic Holding Corp.*,
   580 U.S. 451 (2017) ...................................................................................................... 3

*Doe v. City of Detroit*,
   3 F.4th 294 (6th Cir. 2021) ............................................................................................ 6

*George v. Youngstown State Univ.*,
   966 F.3d 446 (6th Cir. 2020) ......................................................................................... 2

*Kentucky v. Biden*,
   23 F.4th 585 (6th Cir. 2023) ...................................................................................... 3, 9

*Kentucky v. Biden*,
   57 F.4th 545 (6th Cir. 2023) .......................................................................................... 9

*Meriwether v. Hartop*,
   992 F.3d 492 (6th Cir. 2021) ......................................................................................... 8

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ..................................................................................................... 8, 9

*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
   66 F.4th 593 (5th Cir. 2023) .......................................................................................... 3

*Sackett v. EPA*,
   566 U.S. 120 (2012) ...................................................................................................... 4

*Tennessee v. Dep't of Educ.*,
   104 F.4th 577 (6th Cir. 2024) ................................................................................ *passim*

*Tennessee v. Dep't of Educ.*,
   615 F. Supp. 3d 807 (E.D. Tenn. 2022) ................................................................ *passim*

*Texas v. EEOC*,
   633 F. Supp. 3d 824 (N.D. Tex. 2022) ...................................................................... 5, 7

*Texas v. EEOC*,
    933 F.3d 433 (5th Cir. 2019) ............................................................................................. 2, 7

**Statutes**

5 U.S.C. § 705 ................................................................................................................................ 10

Tenn. Code Ann. § 49-2-805 ........................................................................................................... 2

W. Va. Code Ann. § 21-3-12 ........................................................................................................... 2

W. Va. Code Ann. § 21-3-13 ........................................................................................................... 2

## INTRODUCTION

The Enforcement Document[1] is EEOC's third go at imposing gender-identity accommodations on the nation's employers. But this third time is not the charm, and EEOC's responses are déjà vu all over again. As before, EEOC labels its mandates as "guidance" to insulate them from review. But "self-serving labels are not controlling." *Tennessee v. Dep't of Educ.*, 615 F. Supp. 3d 807, 831 (E.D. Tenn. 2022) ("*Tennessee I*"). And the Enforcement Document's radical attempt at restructuring workplaces nationwide is both reviewable and unlawful, since Plaintiffs face the same "threat of legal consequences" as before. *Id.* at 823; *see id.* at 831, 839-40.

This Court's decision in *Tennessee I* likewise answers the remaining issues in this case—regarding justiciability, *Bostock*'s reach, irreparable harm, the public interest, and the balance of equities. Because those answers all support preliminary relief, EEOC essentially ignores this Court's prior decision. But EEOC's single, half-hearted citation does not distinguish the Enforcement Document from its substantively identical predecessor. Opp'n 13. *Tennessee I*'s reasoning remains on point.

The Enforcement Document—and EEOC's defense of it—continue a troubling broader trend. Lately, federal regulators have promulgated sweeping mandates requiring gender-identity accommodations in schools, hospitals, and other workplaces. But when called to account for these actions, agencies downplay their commands and insist they did not mean what they said.[2] But the text of these actions, not after-the-fact rationalizations and obfuscations, control. EEOC's effort to sidestep the Enforcement Document's plain import—or to avoid merits review altogether—speaks volumes about the document's lack of legal basis. This Court should grant preliminary relief.

---

[1] Dkt. #1-2.
[2] *See, e.g.*, Opp'n 6-10, 22 (claiming the Enforcement Document offers EEOC's interpretation of what Title VII requires while disclaiming an intent to enforce Title VII accordingly); *Tennessee v. Becerra*, No. 3:24-cv-161-LG-BWR, Dkt. #24 at 22-27 (S.D. Miss.) (similar for U.S. Department of Health and Human Services rule regarding Section 1557 of the Affordable Care Act); *Tennessee v. Cardona*, No. 2:24-cv-72-DCR-CJS, Dkt. #73 at 5-10, 22 (E.D. Ky.) (similar for U.S. Department of Education rule regarding Title IX)

1

# ARGUMENT

## I. Plaintiffs Are Likely to Succeed on the Merits of Their Challenge.

### A. Plaintiffs' claims are justiciable.

*Standing*. As before, *see Tennessee I*, 615 F. Supp. 3d at 820-25, Plaintiffs have Article III standing because they face sovereign and fiscal harms traceable to the Enforcement Document and remedied by a favorable decision from this Court. PI Br. 10-11. Contra EEOC (at 5), the pre-enforcement nature of this challenge does not strip Plaintiffs of standing. *See Tennessee v. Dep't of Educ.*, 104 F.4th 577, 589-90 (6th Cir. 2024) ("*Tennessee II*"). Because the States maintain that they "are 'likely' to continue doing what the [Enforcement Document] prohibit[s]," they "have 'standing to bring this lawsuit'" now. *Id.* at 590 (citation omitted).

EEOC's attempt (at 5-7) to rebut Plaintiffs' sovereign injury also fails for reasons given the first go-around. "Plaintiffs have enacted, and are currently enforcing, statutes that arguably conflict" with the Enforcement Document. *Tennessee I*, 615 F. Supp. 3d at 822. And federal agencies' overriding those duly enacted statutes and policies inflicts cognizable sovereign injury. *See Tennessee II*, 104 F.4th at 591-95. EEOC's fallback suggestion (at 6 & n.1) that public schools are not Title VII workplaces would be news to the millions of state-employed educational staff who have long enjoyed Title VII protection. *See, e.g.*, *George v. Youngstown State Univ.*, 966 F.3d 446, 459-63 (6th Cir. 2020). Enforcing state limits on access to multi-occupancy restrooms in schools, *cf.* Tenn. Code Ann. § 49-2-805, would trigger liability under the Enforcement Document if applied to school employees. Regardless, Plaintiffs have cited "arguably conflicting" laws and policies applicable to non-school workplaces as well. *See, e.g.*, Compl. ¶ 111 (citing W. Va. Code Ann. §§ 21-3-12, 21-3-13).

Nor can EEOC waive away (at 8-9) the costs Plaintiffs must expend to comply with the Enforcement Document. *See* PI Br. 11 (citing declarations). On imminence, Plaintiffs have a reasonable basis, *see Texas v. EEOC*, 933 F.3d 433, 442 (5th Cir. 2019), to disbelieve EEOC's suggestion (at 9)

that it might not enforce Title VII according to the Enforcement Document. And Plaintiffs have "show[n] that sometime in the relatively near future" they will continue actions that "allegedly violate[] the law." *Kentucky v. Biden*, 23 F.4th 585, 602 (6th Cir. 2023) (citation omitted); *see also Tennessee I*, 615 F. Supp. 3d at 823-25. On costs, EEOC is wrong (at 9) that Plaintiffs must prove that existing staff is insufficient to implement the Enforcement Document, nor must Plaintiffs precisely "quantify" the costs attributable to the Enforcement Document's gender-identity mandates. It is enough—as shown by Plaintiffs' declarations—that the Enforcement Document requires Plaintiffs to devote resources and personnel time to revising current policies and retraining employees. *Cf. Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). If anything, Defendants' request that Plaintiffs devote resources to finding the "precise dollar figure" of compliance expenses would perversely compound their unrecoverable costs. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 600 (5th Cir. 2023).

But for the Enforcement Document, these compliance steps would be unnecessary. So, Plaintiffs have no "traceability [or] redressability problems." *Contra* Opp'n 10. "The injuries to Plaintiffs' sovereign interests" likewise "stem directly from Defendants' interpretation[] of Title[] VII" expressed in the Enforcement Document. *Tennessee I*, 615 F. Supp. 3d at 825. Indeed, this Court has rejected EEOC position (at 7, 10) that Plaintiffs' injuries derive from Title VII itself. *See id.* at 825, 833. "Regarding redressability, the requested injunctive and declaratory relief would bar the effect of Defendants' interpretation[] and reduce the harm alleged." *Id.* at 825. And this Court previously rejected EEOC's contention (at 7) that Plaintiffs' claims are not redressable because "a favorable decision would not prevent [others] from suing Plaintiffs based on their understanding of Title[] VII." *Id.*

*Adequate Alternative Remedy*. This Court also already explained that Plaintiffs' ability to raise "their same arguments as defenses in a future enforcement proceeding" does not preclude them from bringing this standalone action. *Tennessee I*, 615 F. Supp. 3d at 834-35 (citing *Sackett v. EPA*, 566 U.S. 120, 127, 131 (2012)). And the Sixth Circuit affirmed that "States need not assume [the] risks" of

3

incurring significant financial penalties while waiting for EEOC to "drop the hammer." *Tennessee II*, 104 F.4th at 602 (cleaned up). It makes no difference, as EEOC claims (at Opp'n 10 & n.2), that *Tennessee II* involved a procedural challenge, as that distinction did not control the court's reasoning on this point. *Id.* at 602-03. Indeed, *Sackett* proves that substantive challenges need not toil through administrative proceedings before coming to court. *See* 566 U.S. at 127, 130-31. *Sackett* also forecloses EEOC's suggestion (at 10 & n.2) that only challenges implicating federal funding lack an adequate alternative remedy. *See Tennessee I*, 615 F. Supp. 3d at 835 (rejecting EEOC's distinguishing *Sackett*).

<u>*Final Agency Action*</u>. The Enforcement Document is final agency action. PI Br. 9-10. EEOC asserts (at 11-12) that the Enforcement Document does not create any legal obligations because the document provides mere "guidance" and disavows "prejudg[ing] the outcome of a specific set of facts." (citation omitted). But such "self-serving labels are not controlling," nor are boilerplate statements that a document "do[es] not have the force of law" or "determine the outcome in any particular case or set of facts." *Tennessee I*, 615 F. Supp. 3d at 831. "A rule called by any other name is still a rule." Dkt. #1-4 at 2. What matters instead is the Enforcement Document's "practical effect," which is to "speak authoritatively on specific conduct"—like maintaining sex-segregated bathrooms—"that constitutes discrimination based on sexual orientation and gender identity." *See Tennessee I*, 615 F. Supp. 3d at 832-33. Like before, the Enforcement Document takes a "firm stance" on "what specific employer conduct constitutes impermissible sex discrimination." *Id.* at 832; *see* Compl. ¶¶ 82-101.

It changes nothing that the Enforcement Document concludes that certain policies might "contribute to unlawful harassment," rather than violate Title VII standing alone. Opp'n 13. The point is that Title VII does not contemplate *any* gender-identity accommodation requirements. *Infra* 6-7. So penalizing employers for maintaining sex-segregated spaces—even if as part of a broader liability inquiry—creates new Title VII obligations and liability. The rule that courts must engage in a "pragmatic" review of the legal consequences of agency action would be a dead letter if EEOC's

4

qualifiers immunized the Enforcement Document from review despite its carrying the same directives and consequences as the 2021 Guidance. *Tennessee I*, 615 F. Supp. 3d at 830 (citation omitted).

Nor does the Enforcement Document leave key decisions up to "EEOC staff['s] … enforcement discretion." *Contra* Opp'n 14. Rather, it unambiguously states that harassing conduct "*includes*" denying gender-identity-aligned access to bathrooms or refusing to use preferred pronouns. Dkt. #1-2 at 17 (emphasis added). The document does not allow staff to ignore such claims when assessing a charge, even if EEOC labels the Enforcement Document merely a "resource." *See Tennessee I*, 615 F. Supp. 3d at 831 (rejecting labels as determinative). Indeed, given EEOC's position (at 21) that "misgendering" is akin to "racial epithets," the Enforcement Document may compel EEOC staff to find a single use of biologically accurate pronouns is "severe or pervasive" enough to support a hostile work environment claim. *See, e.g.*, *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580–81 (D.C. Cir. 2013) (Kavanaugh, J., concurring); *accord* Nat'l Women's Law Ctr. 15 (arguing denial of bathroom access causes severe "psychological harm"). Thus, "in practical effect," the Enforcement Document "requires employers to comply with its stated positions to avoid liability," placing it in the heartland of final agency actions subject to judicial review. *Tennessee I*, 615 F. Supp. 3d at 833.

EEOC cannot deflect (at 14-15) by pointing to DOJ's ultimate enforcement authority. Contra EEOC (at 13-14), by "consolidat[ing] and supersed[ing] several earlier EEOC guidance documents," Dkt #1-2 at 7, the Enforcement Document signals that it "bind[s EEOC] to a legal position and create[s] legal consequences." *See Tennessee II*, 104 F.4th at 599. And where, as here, "the language of an EEOC guidance 'broadly condemn[s]' an employment practice, it 'leaves no room for EEOC staff *not* to issue referrals to the Attorney General when an employer' implements the condemned practice." *Texas v. EEOC*, 633 F. Supp. 3d 824, 840 (N.D. Tex. 2022) (citation omitted). In any event, Plaintiffs seek injunctive and declaratory relief against EEOC *and* DOJ. *See* Compl. ¶¶ 21-25; *id.* at 39-40.

5

### B. The Enforcement Document exceeds EEOC's statutory authority.

#### 1. The Enforcement Document contravenes Title VII.

Title VII's rule against sex discrimination does not prohibit employers' longstanding practice of maintaining sex-separated facilities like bathrooms, locker rooms, and changing areas. PI Br. 12-19. EEOC's frontline response (at 17) is to point to *Bostock v. Clayton County*, 590 U.S. 644 (2020). *Accord* Nat'l Women's Law Ctr. 3-4, 6-7; Small Bus. Maj. 6-7, 14. But, as this Court determined previously, *Bostock* does not support EEOC's mandates because the Court explicitly "d[id] not purport to address bathrooms, locker rooms, or anything else of the kind." 590 U.S. at 681; *see also* PI Br. 13-15. Thus, EEOC (at 17-18) falls back on cases decided "in the four years since the *Bostock* decision." But those cases do not compel EEOC's interpretation for at least two reasons.

*First*, none of EEOC's cited cases regarding gender-identity accommodations were decided by the Supreme Court. *See* PI Br. 15. And while other courts' opinions can persuade, EEOC fails to cite the most persuasive decision for purposes of this case: *Tennessee I*. There, this Court explained that "*Bostock* does not require [EEOC's] interpretation[] of Title VII." *Tennessee I*, 615 F. Supp. 3d at 833. Because the Supreme Court had "refused to decide whether 'sex-segregated bathrooms, locker rooms, and dress codes' violate Title VII," this Court held that EEOC's mandates on those fronts "ignore[d] the limited reach of *Bostock*." *Id.*; *see id.* at 839 ("Defendants' guidance documents are not confined to the *Bostock* decision."). Indeed, *this Court* (contra Opp'n 17) held that EEOC's mandates "with respect to bathrooms, locker rooms, and dress codes … have not been established under federal law" until those "rights and obligations" are recognized by the Sixth Circuit or the Supreme Court. *Id.* at 840 n.17. So it is of no moment that out-of-circuit courts have misread *Bostock* as creating Title VII liability for actions like denying bathroom access based on gender identity. Opp'n 19.

*Second*, while Title VII prohibits discrimination based on transgender status, *see, e.g.*, *Doe v. City of Detroit*, 3 F.4th 294, 300 n.1 (6th Cir. 2021) (cited at Opp'n 17, 19), policies maintaining sex-separated

6

facilities like bathrooms, locker rooms, and changing areas do not *discriminate* on that basis. *See* PI Br. 12, 14-15. *Bostock* explains that discrimination occurs when an individual is treated worse than others who are similarly situated. *See* 590 U.S. at 659. But requiring all men to use men's restrooms neither causes injury nor treats similarly situated individuals differently. PI Br. 12, 14. *Bostock* did not privilege transgender employees so that any "conduct" associated with that "status" is necessarily protected. *See Texas*, 633 F. Supp. 3d at 830-31; PI Br. 14-15. Indeed, not all conduct associated with transgender status is inextricably bound up with "sex" protected by Title VII. *Id.* at 834 (explaining *Bostock* "presumes there will be Title VII cases where the protected class 'sex' may not reach particular conduct").

The major questions doctrine and avoidance principles likewise counsel against EEOC's interpretation. PI Br. 18-19. Because the Enforcement Guidance imposes legal obligations, *supra* 4-5, it is not merely an interpretative rule, *contra* Opp'n 16, and EEOC cannot avoid the major questions implicated by its reorganization of workplaces nationwide. And as discussed *infra* 8, EEOC's responses to the constitutional concerns raised by the Enforcement Document are unavailing.

### 2. The Enforcement Document exceeds EEOC's authority.

EEOC admits that it lacks authority to promulgate substantive rules and reasons that its lack of authority means the Enforcement Document can only qualify as interpretative. Opp'n 15-16. Not so. PI Br. 19; *see also Texas*, 633 F. Supp. 3d at 839-40. "The primary focus is 'on whether the rule has binding effect on agency discretion or severely restricts it.'" *Id.* at 839 (citation omitted). As discussed, *supra* 4-5, the Enforcement Document "go[es] beyond informing the public and expressing the agencies' views as to *Bostock*'s effect in interpreting Title VII" to impose "dress-code, bathroom, and pronoun accommodations," thereby "impos[ing] new duties." *Texas*, 633 F. Supp. at 839-41. EEOC's attempts (at 16) to distinguish *Tennessee II* are unpersuasive, because the Enforcement Guidance's definitive language on these issues fails to "genuinely leave the agency and its decision-makers free to exercise discretion." *Id.* (cleaned up). Nor (at 15-16) does EEOC's past lawful or unchallenged

7

guidance documents shield its distinctly binding and sweeping directives here from scrutiny.

### C. The Enforcement Document violates the Constitution.

*Sovereign Immunity*. Subjecting States to private suits for failing to provide special gender-identity accommodations for employees exceeds the federal government's power under Section 5 of the Fourteenth Amendment. PI Br. 19-21. EEOC cannot dodge this conclusion by pointing to "Title VII and *Bostock*," Opp'n 20, because neither source supports EEOC's position. *Supra* 6-7. Rather, EEOC's novel interpretation of Title VII's protections is "so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997).

*First Amendment*. The Enforcement Document requires Plaintiffs to compel their workers to use preferred pronouns and to police others' pronoun usage. Dkt. #1-2 at 17. The Sixth Circuit has held that States may not do that. *Meriwether v. Hartop*, 992 F.3d 492, 507-12 (6th Cir. 2021). Thus, the Enforcement Document forces Plaintiffs to choose between liability under Title VII or violating the First Amendment rights of their citizens. Even if States have no "duty or power to enforce [their citizens'] rights in respect to their relations with the federal government," Opp'n 20, States do have an interest in avoiding infringing their citizens' rights and the constitutional liability that might result.

## II. The Enforcement Document is arbitrary and capricious.

Like the Enforcement Document, *see* PI Br. 22-23, EEOC's response ignores important aspects of the problem of requiring gender-identity accommodations in the workplace, *see* Opp'n 17 (denying any need to consider "privacy, implementation, or federalism concerns"). Because neither Title VII nor *Bostock* require the gender-identity accommodations imposed by the Enforcement Guidance, *see Tennessee I*, 615 F. Supp. 3d at 825, 833, EEOC's refusal to consider the impacts those conditions will have on workers' privacy, employers' ability to manage, and States' sovereignty is arbitrary and capricious. *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S.

29, 43 (1983). Nor can amici (Small Bus. Maj. 13-14) satisfy EEOC's duty with new post-hoc explanations. *See id.* In any event, amici fail to offer a rubric for discerning and verifying an employee's gender identity. Small Bus. Maj. 13. Nor can some States' agreement with the Enforcement Document's mandates negate the conflict between those requirements and Plaintiffs' laws. *Id.*

## III. Plaintiffs Will Be Irreparably Harmed Absent Injunctive Relief.

<u>*Sovereign Interest*</u>. "Plaintiffs have sovereign interests in enforcing their duly enacted state laws," *Tennessee I*, 615 F. Supp. 3d at 841, particularly laws that further their sovereign interest in protecting the health, safety, welfare, and economic and physical well-being of their citizens, *see Kentucky*, 23 F.4th at 599. As mentioned, the Enforcement Guidance and "several of Plaintiffs' statutes conflict." *Supra* 2. Plaintiffs thus "suffered an immediate injury to their sovereign interests when" EEOC issued the document, which "hamper[s]" Plaintiffs' "ability to enforce their conflicting state laws" and pressures Plaintiffs to change their practices and policies as employers. *Tennessee I*, 615 F. Supp. 3d at 841; *see also* PI Br. 23-25. EEOC's only response (at 22-23) is to downplay the conflict between Plaintiffs' laws and the Enforcement Document that this Court has already recognized.

<u>*Compliance Costs*</u>. Plaintiffs' policies do not align with the Enforcement Document's mandates, requiring Plaintiffs to expend time and resources revising policies and training personnel. PI 24-25. Such costs are classic irreparable harm. *See Kentucky v. Biden*, 57 F.4th 545, 554-56 (6th Cir. 2023). EEOC suggests (at 22) that monetary damages are not irreparable, but they are against the federal government, which enjoys sovereign immunity. *Id.* And because the Enforcement Guidance is in effect, Plaintiffs are spending to comply *now*, *see, e.g.*, Raymer Decl. ¶ 12, so awaiting an enforcement action is unnecessary. *Contra* Opp'n 22.

## IV. The Remaining Factors Favor Preliminary Relief.

Because "the public's true interest lies in the correct application of the law," *Kentucky*, 23 F.4th at 612, the public interest overwhelmingly favors temporarily maintaining the status quo pending

9

judicial review. PI Br. 25. And the status quo would not cause the harm and confusion that EEOC and its amici allege. First, the Enforcement Document is a unilateral mandate from unaccountable agency heads, not a "statute[] enacted by representatives of [the] people," so EEOC would suffer no "irreparable injury" during a temporary stay. Opp'n 23 (citation omitted). Second, to the extent EEOC (at 23) and its amici (Small Bus. Maj. 9-13; Nat'l Women's Law Ctr. 8-18) believe that the Enforcement Document's gender-identity accommodations are good policy, an injunction would not prevent employers from independently adopting those policies. Third, maintaining the status quo that employers have long operated under cannot sow greater confusion than implementing a total reorganization of workplaces nationwide. *Contra* Opp'n 23; Nat'l Women's Law Ctr. 5-7; Small Bus. Maj. 15-16.

## V.     The APA and Equity Support Entry of the State's Requested Relief.

Plaintiffs press protected interests in enforcing their laws that safeguard privacy, safety, and free speech. Preventing harm to these interests, at minimum, requires enjoining Defendants from enforcing Title VII according to the Enforcement Document's gender-identity mandates in the Plaintiff States. And Section 705 of the APA authorizes a reviewing court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. That authority readily encompasses denying the Enforcement Document of legal effect pending review. And courts regularly grant relief to the parties properly before them, including out-of-circuit States. *See Tennessee I*, 615 F. Supp. 3d at 842 & n.18. EEOC points to no rule, nor any conflict over the "lawfulness of" the Enforcement Document, *cf. Tennessee II*, 104 F.4th at 615, that counsels adopting EEOC's aberrant approach of denying relief to Plaintiffs here.

## CONCLUSION

This Court should grant Plaintiffs' motion for a § 705 stay and preliminary injunction.

Respectfully submitted,

*/s/ Steven J. Griffin*
WHITNEY HERMANDORFER
Director of Strategic Litigation
STEVEN J. GRIFFIN
Senior Counsel for Strategic Litigation
HARRISON GRAY KILGORE
Strategic Litigation Counsel and
Assistant Solicitor General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-8726
Whitney.Hermandorfer@ag.tn.gov
Steven.Griffin@ag.tn.gov
Harrison.Kilgore@ag.tn.gov

*Counsel for Plaintiff the State of Tennessee*

| | |
|---|---|
| STEVE MARSHALL<br>   Attorney General<br><br>/s/ *Edmund G. LaCour, Jr.*<br>EDMUND G. LACOUR, JR.*<br>   *Solicitor General*<br>OFFICE OF THE ALABAMA<br>ATTORNEY GENERAL<br>501 Washington Avenue<br>P.O. Box 300152<br>Montgomery, AL 36130<br>(334) 242-7300<br>Edmund.LaCour@AlabamaAG.gov<br>*Counsel for Plaintiff State of Alabama* | TREG TAYLOR<br>   Attorney General<br><br>/s/ *Cori Mills*<br>CORI MILLS*<br>   *Deputy Attorney General, Civil Division*<br>OFFICE OF THE ALASKA ATTORNEY GENERAL<br>Alaska Department of Law<br>1031 West 4th Avenue, Suite 200<br>Anchorage, AK 99501<br>(907) 465-2132<br>Cori.Mills@alaska.gov<br>*Counsel for Plaintiff State of Alaska* |
| TIM GRIFFIN<br>   Attorney General<br><br>/s/ *Nicholas J. Bronni*<br>NICHOLAS J. BRONNI*<br>   *Solicitor General*<br>OFFICE OF THE ARKANSAS<br>   ATTORNEY GENERAL<br>323 Center Street, Suite 200<br>Little Rock, Arkansas 72201<br>(501) 682-6302<br>Nicholas.Bronni@arkansasag.gov<br>*Counsel for Plaintiff State of Arkansas* | CHRISTOPHER CARR<br>   Attorney General<br><br>/s/ *Stephen Petrany*<br>STEPHEN PETRANY*<br>   *Solicitor General*<br>OFFICE OF THE ATTORNEY GENERAL OF GEORGIA<br>Georgia Department of Law<br>40 Capitol Square SW<br>Atlanta, Georgia 30334<br>(404) 458-3408<br>Spetrany@law.ga.gov<br>*Counsel for Plaintiff State of Georgia* |
| THEODORE E. ROKITA<br>   Attorney General<br><br>/s/ *James A. Barta*<br>JAMES A. BARTA*<br>   *Solicitor General*<br>OFFICE OF THE ATTORNEY GENERAL OF INDIANA<br>IGC South, Fifth Floor<br>302 W. Washington St.<br>Indianapolis, Indiana 46204<br>(317) 232-0709<br>James.Barta@atg.in.gov<br>*Counsel for Plaintiff State of Indiana* | BRENNA BIRD<br>   Attorney General<br><br>/s/ *Eric H. Wessan*<br>ERIC H. WESSAN*<br>   *Solicitor General*<br>OFFICE OF THE IOWA ATTORNEY GENERAL<br>1305 E. Walnut Street<br>Des Moines, Iowa 50319<br>(515) 281-5164<br>Eric.Wessan@ag.iowa.gov<br>*Counsel for Plaintiff State of Iowa* |

KRIS W. KOBACH
  Attorney General

/s/ *Abhishek Kambli*
ABHISHEK KAMBLI*
  *Deputy Attorney General*
OFFICE OF THE KANSAS ATTORNEY GENERAL
120 SW 10th Ave.
Topeka, KS 66612
(785) 296-7109
Abhishek.Kambli@ag.ks.gov
*Counsel for Plaintiff State of Kansas*

LYNN FITCH
  Attorney General

/s/ *Justin L. Matheny*
Justin L. Matheny*
  *Deputy Solicitor General*
OFFICE OF THE MISSISSIPPI ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3825
Justin.Matheny@ago.ms.gov
*Counsel for Plaintiff State of Mississippi*

MICHAEL T. HILGERS
  Attorney General

/s/ *Lincoln J. Korell*
LINCOLN J. KORELL*
  *Assistant Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF NEBRASKA
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2682
lincoln.korell@nebraska.gov
*Counsel for Plaintiff State of Nebraska*

RUSSELL COLEMAN
  Attorney General

/s/ *Justin D. Clark*
JUSTIN D. CLARK*
  *Civil Chief*
AARON SILLETTO*
  *Executive Director, Office of Civil and Environmental*
KENTUCKY OFFICE OF THE ATTORNEY GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Justind.Clark@ky.gov
Aaron.Silletto@ky.gov
*Counsel for Plaintiff Commonwealth of Kentucky*

ANDREW BAILEY
  Attorney General

/s/ *Joshua M. Divine*
JOSHUA M. DIVINE*
  *Solicitor General*
MISSOURI ATTORNEY GENERAL'S OFFICE
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
josh.divine@ago.mo.gov
*Counsel for Plaintiff State of Missouri*

DAVE YOST
  Attorney General

/s/ *T. Elliot Gaiser*
T. ELLIOT GAISER*
  *Solicitor General*
OFFICE OF THE OHIO ATTORNEY GENERAL
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
thomas.gaiser@ohioago.gov
*Counsel for the State of Ohio*

Alan Wilson
  Attorney General

/s/ *Thomas T. Hydrick*
Thomas T. Hydrick*
  *Assistant Deputy Solicitor General*
Office of the Attorney General
of South Carolina
1000 Assembly Street
Columbia, SC 29201
(803) 734-4127
Thomashydrick@scag.gov
*Counsel for Plaintiff State of South Carolina*


Sean Reyes
  Attorney General

/s/ *Stanford Purser*
Stanford Purser*
  *Deputy Solicitor General*
Utah Attorney General's Office
160 East 300 South, 6th floor
PO Box 140856
Salt Lake City, UT 84114-0856
(801) 366-0100
Spurser@agutah.gov
*Counsel for Plaintiff State of Utah*

Patrick Morrisey
  Attorney General

/s/ *Michael R. Williams*
Michael R. Williams*
  *Principal Deputy Solicitor General*
Office of the West Virginia Attorney
General
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
(304) 558-2021
Michael.R.Williams@wvago.gov
*Counsel for Plaintiff State of West Virginia*

Marty J. Jackley
  Attorney General

/s/ *Grant M. Flynn*
Grant M. Flynn*
  *Assistant Attorney General*
Office of the Attorney General
State of South Dakota
1302 E. Hwy. 14, Suite #1
Pierre, SD  57501
(605) 773-3215
Grant.Flynn@state.sd.us
*Counsel for Plaintiff State of South Dakota*


Jason S. Miyares
  Attorney General

*/s/ Kevin M. Gallagher*
Kevin M. Gallagher*
  *Principal Deputy Solicitor General*
Brendan T. Chestnut*
  *Deputy Solicitor General*
Virginia Attorney General's Office
202 North 9th Street
Richmond, Virginia 23219
(805) 786-2071
kgallagher@oag.state.va.us
*Counsel for the Commonwealth of Virgini*


**\*   Admitted Pro Hac Vice**

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, the foregoing document was served via the Court's electronic-filing system to all counsel of record.

*/s/ Steven J. Griffin*
STEVEN J. GRIFFIN
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
steven.griffin@ag.tn.gov

*Counsel for Plaintiff the State of Tennessee*
