# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

STATE OF TENNESSEE, STATE OF ALA-
BAMA, STATE OF ALASKA, STATE OF AR-
KANSAS, STATE OF GEORGIA, STATE OF
INDIANA, STATE OF IOWA, STATE OF
KANSAS, COMMONWEALTH OF KEN-
TUCKY, STATE OF MISSISSIPPI, STATE
OF MISSOURI, STATE OF NEBRASKA,
STATE OF OHIO, STATE OF SOUTH CAR-
OLINA, STATE OF SOUTH DAKOTA,
STATE OF UTAH, COMMONWEALTH OF
VIRGINIA, STATE OF WEST VIRGINIA,

       *Plaintiffs*,

       v.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION; ANDREA LUCAS, in her
official capacity as Acting Chair of the Equal
Employment Opportunity Commission;
UNITED STATES DEPARTMENT OF
JUSTICE; PAMELA J. BONDI, in her official
capacity as Attorney General of the United
States; and ANDREW M. WARNER, in his
official capacity as Acting Assistant Attorney
General for Civil Rights at the United States
Department of Justice,

       *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:24-cv-00224
Judge Charles E. Atchley, Jr.
Magistrate Judge Debra C. Poplin

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, VACATUR, AND A PERMANENT INJUNCTION

---

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

    I.   Statutory Background. ...........................................................................................3

    II.  *Bostock*'s Limited Title VII Holding About Hiring and Firing. ...........................5

    III. EEOC's Unlawful 2021 Gender-Identity Guidance. ............................................6

    IV. EEOC's Enforcement Document. .........................................................................7

        A.  Promulgation and procedural history. ..........................................................7

        B.  DOJ's position change. ...............................................................................10

        C.  EEOC's refusal to rescind the Enforcement Document. ............................10

ARGUMENT ...................................................................................................................11

    I.   Plaintiff States' Challenge Remains Live and Justiciable ................................11

        A.  Plaintiff States have standing. ....................................................................12

        B.  The Enforcement Document is final agency action. ...................................15

    II.  The Enforcement Document Exceeds EEOC's Title VII Authority. ...................16

        A.  The Enforcement Document contravenes Title VII. ..................................17

        B.  The Enforcement Document exceeds EEOC's rulemaking authority...........22

    III. The Enforcement Document Violates the APA. ...................................................22

    IV. Plaintiff States Are Entitled to Vacatur, a Permanent Injunction, and Declaratory Relief. ....23

        A.  This Court should vacate the offending parts of the Enforcement Document. ..............23

        B.  This Court should also grant declaratory and injunctive relief to the States. ....................24

CONCLUSION .................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atrium Med. Ctr. v. U.S. Dep't of Health & Human Servs.*,
766 F.3d 560 (6th Cir. 2014) ............................................................................................22

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ...................................................................................................*passim*

*Cath. Benefits Ass'n v. Burrows*,
732 F. Supp. 3d 1014 (D.N.D. 2024) .................................................................................9

*City of Arlington v. FCC*,
569 U.S. 290 (2013) ..........................................................................................................16

*Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*,
263 F.3d 513 (6th Cir. 2001) ...................................................................................... 12, 13

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
144 S. Ct. 2440 (2024) ......................................................................................................23

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008) ..........................................................................................................11

*Dep't of Educ. v. Louisiana*,
603 U.S. 866 (2024) ..........................................................................................................20

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ..........................................................................................................25

*EEOC v. Shell Oil Co.*,
466 U.S. 54 (1984) ...................................................................................................... 4, 14

*Eknes-Tucker v. Governor of Alabama*,
80 F.4th 1205 (11th Cir. 2023) ...........................................................................................6

*Ellis v. Railway Clerks,*
466 U.S. 435 (1984) .................................................................................................... 14, 15

*Fortner v. Thomas*,
983 F.2d 1024 (11th Cir. 1993) ........................................................................................18

*Health Care Net. v. Stapleton*,
581 U.S. 468 (2017) ..........................................................................................................18

ii

*Kentucky v. EPA*,
    123 F.4th 447 (6th Cir. 2024)................................................................................ 23, 24

*Kentucky v. Yellen*,
    54 F.4th 325 (6th Cir. 2022)...........................................................................12, 13, 14

*Knox v. Serv. Emps. Int'l Union, Local, 1000*,
    567 U.S. 298 (2012) ........................................................................................... 14, 15

*L. W. ex rel. Williams v. Skrmetti*,
    83 F.4th 460 (6th Cir. 2023)...........................................................................6, 20, 21

*Lavern B., Complainant*,
    EEOC DOC 0720130029, 2015 WL 780702 (Feb. 12, 2015) ..........................................20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................................12

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ............................................................................................................3

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ...................................................................................... 6, 20

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ..........................................................................................................23

*Oncale v. Sundowner Offshore Servs.*,
    523 U.S. 75 (1998) ................................................................................................4, 17, 20

*Pelcha v. MW Bancorp, Inc.*,
    988 F.3d 318 (6th Cir. 2021) .............................................................................................6

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
    579 U.S. 115 (2016) ........................................................................................................21

*Sharpe-Miller v. WalMart, Inc.*,
    No. 24-2055 (10th Cir. Aug. 9, 2024)................................................................................9

*Tennessee v. Cardona*,
    737 F. Supp. 3d 510 (E.D. Ky. 2024) ..............................................................................24

*Tennessee v. Cardona*,
    No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024) ...............................................20

*Tennessee v. Cardona*,
    No. CV 2:24-072-DCR, 2024 WL 3631032 (E.D. Ky. July 10, 2024).............................24

iii

*Tennessee v. EEOC,*
    -- F.4th --, 2025 WL 556191 (8th Cir. 2025) ............................................................12

*Tennessee v. U.S. Dep't of Educ.,*
    104 F.4th 577 (6th Cir. 2024) ..................................................................7, 12, 13, 16

*Tennessee v. U.S. Dep't of Educ.,*
    615 F. Supp. 3d 807 (E.D. Tenn. 2022) ..................................................*passim*

*Texas Dep't of Cmty. Affairs v. Burdine,*
    450 U.S. 248 (1981) ..................................................................................17

*Texas v. Cardona,*
    743 F. Supp. 3d 824 (N.D. Tex. 2024) ..........................................15, 18, 24

*Texas v. EEOC,*
    633 F. Supp. 3d 824 (N.D. Tex. 2022) ..................................................*passim*

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ..................................................................22

*Texas v. EEOC,*
    No. 2:21-cv-104Z, 2022 WL 22869778 (N.D. Tex. May 26, 2022) ......16

*Texas v. United States,*
    201 F. Supp. 3d 810 (N.D. Tex. 2016) ......................................................6

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016) ..........................................................................12, 15

*United States ex rel. Att'y Gen. v. Del. & Hudson Co.,*
    213 U.S. 366 (1909) ..................................................................................22

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ..................................................................................21

**Statutes**

5 U.S.C. § 703 ..........................................................................................................24

5 U.S.C. § 706(2)(A), (C) ..................................................................................16, 22

5 U.S.C. § 706(2)(B) ..............................................................................................22

5 U.S.C. § 706(2)(C) ..............................................................................................23

28 U.S.C. § 2201(a) ................................................................................................24

iv

29 U.S.C. § 161 ....................................................................................................................4

42 U.S.C. § 2000e(j) ..........................................................................................................17

42 U.S.C. § 2000e-2(a)(1) .............................................................................................3, 20

42 U.S.C. § 2000e-4 ............................................................................................................4

42 U.S.C. § 2000e-5(b) ..................................................................................................4, 14

42 U.S.C. § 2000e-12(a) ...................................................................................................22

42 U.S.C. § 2000e-16(a) ...................................................................................................20

42 U.S.C. § 2000e-16c ...................................................................................................5, 13

**Rule**

Fed. R. Civ. P. 57 ..............................................................................................................24

**Regulations**

29 C.F.R. §§ 1603.109, 1603.304 ...................................................................................5, 13

*Proposed Enforcement Guidance on Harassment in the Workplace,*
   88 Fed. Reg. 67,750 (Oct. 2, 2023) ................................................................................7

**Other Authorities**

*Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*
   Exec. Order 13988, 86 Fed. Reg. 7023 (Jan. 20, 2021) ...................................................6

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government,*
   Exec. Order 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ..........................................*passim*

v

## INTRODUCTION

At present, Plaintiff States, the President of the United States, Defendant U.S. Department of Justice ("DOJ"), and Acting Chair of the Equal Employment Opportunity Commission ("EEOC" or "Commission") Andrea Lucas all agree that the challenged Enforcement Document advances an indefensible interpretation of Title VII. Nevertheless, the Enforcement Document persists with legally binding effect—inflicting a series of harms on Plaintiff States. Thus, Plaintiff States seek summary judgment vacating the unlawful portions of the Enforcement Document, as well as declaratory and permanent-injunctive relief.

A day-one presidential Executive Order instructs that "[g]ender identity" is not "a replacement for sex," disavows the view of the "prior Administration" that Title VII "requires gender identity-based access to single-sex spaces," directs agencies to "effectuate this policy by taking appropriate action to ensure that intimate spaces ... are designated by sex and not identity," and directs the Attorney General to issue "guidance to ensure the freedom to express the binary nature of sex and the right to single-sex spaces in workplaces" covered by Title VII. Exec. Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615, 8616-17 (Jan. 20, 2025). Most pointedly, the Executive Order directs EEOC to rescind the Enforcement Document as inconsistent with these directives. *Id.* at 8617-18.

Given this turn of events, this Court's initial doubts about whether this case "remains live" are understandable. Jan. 23 Order 2, Dkt. #89. But notwithstanding Acting Chair Lucas's intent to "defend the biological and binary reality of sex and related rights, including women's rights to single-sex spaces at work," she "cannot unilaterally remove or modify" the Enforcement Document. EEOC Press Release, *Removing Gender Ideology and Restoring the EEOC's Role of Protecting Women in the Workplace* (Jan. 28, 2025), https://perma.cc/H9E3-MJUL. EEOC currently lacks a quorum to even consider

1

rescinding the Enforcement Document. When such a quorum may exist is anyone's guess, as is whether a majority of Commissioners will vote to rescind. Meanwhile, the Enforcement Document remains in effect, dictating EEOC's Title VII enforcement. Thus, States remain subject to the Enforcement Document as if the 2024 Election and the Executive Order's express instruction to EEOC never happened. So this case remains ripe for judicial resolution.[1]

Plaintiff States thus respectfully seek final judgment to remedy their ongoing harms from EEOC's Enforcement Document. They have standing to pursue this relief because a live controversy persists: States are regulated parties subject to the Enforcement Document. That document remains in force and inflicts harm that Plaintiff States' requested vacatur would redress. Nor does DOJ's change in position deprive this Court of jurisdiction or cure Plaintiff States' harm. While the Enforcement Document is operative, it continues to inflict the same sovereign harms this Court identified in enjoining EEOC's similar prior guidance, along with compliance cost-related harms the Sixth Circuit has repeatedly said confer Article III standing. EEOC's Commissioners enjoy a panoply of enforcement powers against States, including some that Commissioners can wield unilaterally. And Plaintiff States are rightly concerned that those powers will be used against them. *Infra* 14. So DOJ's non-enforcement stance does not redress Plaintiff States' separate harms traceable directly to EEOC.

On the merits, the Enforcement Document has fatal statutory and procedural flaws. *First*, neither Title VII nor *Bostock v. Clayton County*, 590 U.S. 644 (2020), countenance the Enforcement Document's workplace gender-identity accommodations—as recent Sixth Circuit and Supreme Court decisions indicate and DOJ now agrees. *Second*, EEOC's consideration of the Enforcement Document and Plaintiff States' opposition to the same does not pass muster under the Administrative Procedure

---

[1] Plaintiff States incorporate herein the filings submitted in support of their motion for preliminary injunction and § 705 stay. *E.g.*, Mot. for Prelim. Inj. & § 705 Stay, Dkt. #32; PI Br., Dkt. #33; PI Reply Br., Dkt. #83; Notice, Dkt. #84.

2

Act ("APA"). Basic administrative-law limits require that agencies consider important aspects of the problem under consideration, but EEOC shrugged off concerns about the Enforcement Document's impacts on women's safety and privacy, effective workplace operations, and federalism.

These dispositive defects infect the challenged aspects of the Enforcement Document and warrant outright vacatur of the offending provisions. This Court also should issue declaratory and injunctive relief to ensure that EEOC does not continue to distort, apply, and enforce Title VII to Plaintiff States' detriment. Beyond establishing the merits of their claims, Plaintiff States readily satisfy the other showings needed to obtain injunctive relief. EEOC's unlawful enforcement of Title VII inflicts a series of irreparable injuries on Plaintiff States. And the equities support holding EEOC to the law rather than permitting it to administratively amend Title VII to outlaw conduct and speech the statute does not prohibit, harming employers' and employees' right to free speech and privacy.

In short, neither Title VII nor the Constitution licenses unelected executive officials to unilaterally saddle the nation's employers and employees with controversial gender-identity accommodations that trample States' rights, longstanding sex-separation practices, and the safety and privacy interests of workers and customers. This Court should grant final judgment to Plaintiff States.

## BACKGROUND

### I. Statutory Background.

Congress enacted Title VII in 1964 to prohibit discrimination in employment based on an individual's "sex," among other characteristics. 42 U.S.C. § 2000e-2(a)(1). As DOJ and courts alike have recognized, the term "sex" refers to "an individual's immutable biological classification as either male or female." *See* 90 Fed. Reg. at 8615. One way to "establish a violation of Title VII" is by proving that sex-based discrimination has created a "hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). "When the workplace is permeated with

3

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78 (1998) (citation omitted). But the "critical issue" for establishing such a claim is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80 (citation omitted). That's because to "discriminate" means to treat an individual worse than others who are similarly situated because of a protected characteristic. *See Bostock*, 590 U.S. at 657.

EEOC implements Title VII. *See* 42 U.S.C. § 2000e-4. Thus, individuals who believe their rights have been violated under Title VII must first file a charge with EEOC. *See id.* § 2000e-5(b). A single Commissioner also may initiate a charge. *Id.* Once a charge is filed, EEOC notifies the employer, investigates the charge, and determines whether "reasonable cause" exists to believe discrimination occurred. *Id.* To investigate whether "reasonable cause" exists "the Commission is entitled to inspect and copy 'any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation.'" *EEOC v. Shell Oil Co.*, 466 U.S. 54, 63 (1984) (citation omitted) (alteration in original). And the Commission may obtain such evidence by "exercis[ing] all of the powers conferred upon the National Labor Relations Board by 29 U.S.C. § 161, including the authority to issue administrative subpoenas and to request judicial enforcement of those subpoenas." *Id.*

If EEOC does not find "reasonable cause" or determines that a defense applies, the charge is dismissed, and the employee may file suit after receiving a notice of right to sue. *See id.* § 2000e-5(b), (f)(1). If reasonable cause exists, EEOC works to "eliminate" any "alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* § 2000e-5(b). If those methods fail to resolve a complaint against a state employer, EEOC refers the matter to DOJ to make

4

its own determination whether to sue or issue a notice of right to sue. *See Id.* § 2000e-5(f)(1). Where a Title VII claim is brought by certain high-level state employees under the Government Employee Rights Act of 1991 ("GERA"), EEOC has authority to adjudicate claims against the state employer on its own, subject to judicial review. *See* 42 U.S.C. § 2000e-16c; 29 C.F.R. §§ 1603.109, 1603.304.

## II. *Bostock*'s Limited Title VII Holding About Hiring and Firing.

In *Bostock*, the Supreme Court took up a narrow question: whether an employer is liable for "sex" discrimination under Title VII for "fir[ing] someone simply for being homosexual or transgender." 590 U.S. at 651. The Court accepted that "sex" in Title VII "refer[s] only to biological distinctions between male and female." *Id.* at 655. And the Court held that Title VII imposes a "but-for" causation standard. *Id.* at 656. Applying this logic, the Court held that Title VII prohibited the employers from terminating a man simply for "traits or action that it tolerates" in a woman— namely, being attracted men or identifying as a woman. *Id.* at 660-61. The Court thus concluded, in that case, that an "individual employee's sex play[ed] an unmistakable and impermissible role" in an employer's decision to fire that individual simply for being homosexual or transgender, which are "not relevant" traits for employment decisions. *Id.* at 660.

That was "[t]he only question" the Court purported to decide in *Bostock*. *Id.* at 681. The Court took pains to clarify that its holding should not be read to "prejudge" Title VII's application to sex-segregated workplace policies, like "bathrooms, locker rooms, or anything else of the kind." *Id.* It explained that whether "sex-segregated bathrooms, locker rooms, and dress codes … might or might not qualify as unlawful discrimination … are questions" only "for future cases." *Id.* And it accepted that Title VII "discrimination" means "treating [an] individual worse than others who are similarly situated." *Id.* at 657.

In the years that followed, the Sixth Circuit repeatedly rejected efforts to extend *Bostock*

5

beyond its narrow holding. *See, e.g., L. W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 484-85 (6th Cir. 2023), *cert. granted sub nom. United States v. Skrmetti*, 144 S. Ct. 2679 (2024); *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021); *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021). In particular, the Sixth Circuit recognized that *Bostock* does not extend beyond Title VII, *see Pelcha*, 988 F.3d at 324, or to factual scenarios triggering "marked differences in application of the anti-discrimination principle," *Skrmetti*, 83 F.4th at 485. Other Courts of Appeals agree that *Bostock* "bears minimal relevance" in "different factual context[s]." *See Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205, 1229 (11th Cir. 2023). DOJ initially understood and enforced *Bostock*'s limits too. *See* Mem. of Acting Associate Attorney General Daukas to DOJ Civil Rights Division, *Application of* Bostock v. Clayton County (Jan. 17, 2021), *attached as* Compl. Ex. B, Dkt. #1-3, *Tennessee v. U.S. Dep't of Educ.*, No. 3:21-cv-308 (E.D. Tenn. Aug. 30, 2021).

### III. EEOC's Unlawful 2021 Gender-Identity Guidance.

Upon taking office, President Biden declared that *Bostock*'s analysis changed the meaning of all federal law forbidding sex discrimination. Exec. Order 13988, *Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*, 86 Fed. Reg. 7023, 7023 (Jan. 20, 2021), *rescinded by* 90 Fed. Reg. at 8617. In response, EEOC sought to reup an earlier failed effort to extend Title VII to new contexts involving employees' gender identities. *See Texas v. United States*, 201 F. Supp. 3d 810, 815-16, 836 (N.D. Tex. 2016) (enjoining EEOC's 2016 Rule requiring employee access to intimate spaces be based on gender identity). Acting unilaterally, then-Chair Burrows issued a "technical assistance document" in June 2021 purporting to reflect EEOC's interpretation of what constitutes discrimination under Title VII. EEOC, *Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity* (June 15, 2021), https://perma.cc/9VUB-ZK2P ("2021 Guidance"). Citing *Bostock*, the 2021 Guidance deemed it sex discrimination to deny bathroom access that "corresponds

6

to the employee's gender identity."  EEOC offered no comment opportunity.

Tennessee, joined by nineteen other States, challenged the 2021 Guidance.  *See Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 818-19, 837-40 (E.D. Tenn. 2022) ("*Tennessee I*").  This Court reasoned that, because "*Bostock* does not require [EEOC's] interpretation[] of Title VII," the 2021 Guidance imposed "*new* legal obligations on regulated entities."  *Id.* at 833 (emphasis in original).  As such, this Court held that the 2021 Guidance should have gone through notice-and-comment procedures and enjoined enforcement of the 2021 Guidance on that basis.  *See id.* at 838-40.  A separate district court held the same, plus docked the 2021 Guidance on the merits for extending beyond *Bostock*.  *See Texas v. EEOC*, 633 F. Supp. 3d 824, 830-36, 842 (N.D. Tex. 2022) ("*Texas v. EEOC*").

The Sixth Circuit later affirmed this Court's preliminary injunction decision.  *Tennessee v. U.S. Dep't of Educ.*, 104 F.4th 577 (6th Cir. 2024) ("*Tennessee II*").  Although by then the case centered on similar Title IX guidance also challenged, the Sixth Circuit agreed with this Court's holding that States have standing to challenge federal rules that impede sovereign interests, *id.* at 591-95, or harm "proprietary" interests, *id.* at 587-91.  The Sixth Circuit further agreed with this Court that regardless of a document's label, agency actions "by which rights or obligations [have been] determined or from which legal consequences will flow" are "final" and subject to challenge under the APA.  *Id.* at 598 (citation omitted).

## IV.  EEOC's Enforcement Document.

### A.  Promulgation and procedural history.

1.  Ultimately, in fall of 2023, EEOC proposed and permitted a 30-day comment period on a new enforcement document purporting to identify what Title VII requires vis-à-vis gender identity.  EEOC, *Proposed Enforcement Guidance on Harassment in the Workplace*, 88 Fed. Reg. 67,750 (Oct. 2, 2023), https://perma.cc/KYA9-Z5RX.  EEOC maintained its expansive position about *Bostock*'s

7

effect on sex-segregated spaces and facilities. Tennessee led a coalition of twenty States explaining the statutory, constitutional, and APA flaws with EEOC's proposed interpretation of Title VII. *See* States' Comment Letter, Dkt. #1-3; *see also* Compl. ¶¶ 73-81, Dkt. #1 (summarizing comments).

Even so, EEOC published the Enforcement Document and maintained that Title VII requires gender identity-based workplace accommodations in bathrooms and elsewhere. Citing *Bostock*, the Enforcement Document sets out allegedly "[h]arrasing conduct" based on sexual orientation and gender identity, including:

- using "a name or pronoun inconsistent with [an] individual's known gender identity (misgendering)";

- prohibiting an employee from presenting in a manner that would not "stereotypically be associated with that person's sex"; and

- denying an employee "access to a bathroom or other sex-segregated facility consistent with [an] individual's gender identity."

Dkt. #1-2 at 17. The Enforcement Document also makes clear that employers are liable for more than just "harassing conduct"—*e,g.*, misgendering—directed at an employee by supervisors or other employees in the workplace. Under the Enforcement Document, employers not only must accommodate their employees' preferred pronouns, dress codes, bathrooms, or locker rooms. They also must police the speech of employees and customers, including by correcting their use of biologically accurate pronouns. *See id.* at 51, 55, 76-85. EEOC acknowledged that such a requirement raised free speech and religion-based rights concerns under *Meriwether. Id.* at 98. Yet it punted those issues for "consideration" later "if a charge is filed with the EEOC." *Id.*

Now-Acting Chair Lucas dissented. She explained that EEOC is meant to "***protect[] women*** from sexual harassment and sex-based discrimination at work," but the Enforcement Document "effectively eliminates single-sex workplace facilities[,] … imping[ing] on women's … rights to freedom

8

of speech and belief[,] … and fundamentally betray[ing EEOC's] mission." Lucas Statement 1, Dkt. #1-4 (emphasis in original). The Enforcement Document, she reasoned, "turns anti-harassment principles upside down," and "[w]omen in the workplace will pay the price." *Id.* at 1-2. She also warned against crediting EEOC's claim that the Enforcement Document does not have the force and effect of law: "A rule called by any other name is still a rule." *Id.* at 2.

2. Tennessee, joined by seventeen states, filed this suit to challenge the Enforcement Document as violative of EEOC's statutory authority, the U.S. Constitution, and the APA. The States also sought preliminary injunctive relief, supported by declarations explaining the sovereign harms and compliance costs the Enforcement Document would inflict. Meanwhile, in Texas, a separate set of plaintiffs sued to challenge the Enforcement Document on similar grounds; that case remains pending. *Texas v. EEOC*, No. 2:24-cv-173 (N.D. Tex.). And in North Dakota, a religious employer obtained a preliminary injunction against EEOC and its agents from interpreting or enforcing Title VII consistent with the Enforcement Document's mandates regarding sex-segregated spaces and pronoun usage. *See Cath. Benefits Ass'n v. Burrows*, 732 F. Supp. 3d 1014, 1030 (D.N.D. 2024).

EEOC proceeded to cite the Enforcement Document as authority in briefing before courts and to adjudicate complaints consistent with the document's interpretation of Title VII. *See, e.g.*, Br. of EEOC as Amicus at 10, *Doe v. Saber Healthcare Grp.*, No. 24-2106 (3d Cir. Oct. 15, 2024); EEOC Br. at 24, *EEOC v. BNSF Ry. Co.*, No. 24-2082 (8th Cir. Sept. 13, 2024); Br. of EEOC as Amicus at 23, *Sharpe-Miller v. WalMart, Inc.*, No. 24-2055 (10th Cir. Aug. 9, 2024); EEOC, *EEOC Sues Two Employers for Sex Discrimination* (Oct. 1, 2024), https://perma.cc/WJZ8-XQ9Y (touting EEOC suits predicated on allegedly discriminatory conduct based on gender identity, like use of "the wrong pronoun").

On December 19, 2024, this Court set a hearing on Plaintiff States' preliminary injunction motion for January 27, 2025, while ordering the parties to confer beforehand about whether "a judicial

resolution remains necessary." Dec. 19 Order 1-2, Dkt. #86. The parties met and conferred on January 13, 2025; nothing was resolved. Once President Trump took office, Defendants sought to vacate the hearing given the President's Executive-Order instruction that EEOC rescind the Enforcement Document. Mot. to Vacate Hr'g, Dkt. #87. Plaintiff States did not oppose vacating the hearing since the "posture" of the case warranted resolution of the then-pending motion for preliminary judgment "on the papers." Resp. to Mot. to Vacate Hr'g 1, Dkt. #88. Concerned that impending rescission of the Enforcement Document would "moot" this case, the Court vacated the scheduled hearing, denied the pending motion for preliminary injunction without prejudice, ordered the parties to confer about the Executive Order's "effect on this litigation," and required any renewed request for preliminary relief be filed within 21 days. Jan. 23 Order 1-2. After conferring, the parties agreed to a summary judgment briefing schedule that this Court entered. Feb. 10 Order, Dkt. #93.

### B.     DOJ's position change.

DOJ no longer holds the position that Title VII supports the Enforcement Document's required gender-identity accommodations. President Trump's Executive Order now reflects "[t]he position of the United States … notwithstanding any prior position taken by the Defendants in this case." Mot. to Vacate Hr'g 2. DOJ further agrees with Plaintiff States that gender identity "does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex." 90 Fed. Reg. at 8616. DOJ also agrees that neither Title VII nor *Bostock* "requires gender identity-based access to single-sex spaces." *Id.*; *see also* Mem. of Acting Associate Attorney General to DOJ Civil Rights Division (Feb. 12, 2025), https://perma.cc/B9D3-UJY7.

### C.     EEOC's refusal to rescind the Enforcement Document.

Even though President Trump's Executive Order specifically directed EEOC to rescind the Enforcement Document, the Commission refused to do so. Instead, Commissioner Kotagal, then-

10

Commissioner Burrows, and then-Commissioner Samuels—who comprised the Commission majority that initially voted to promulgate the challenged document—issued a statement affirming protections for "LGBTQI+ workers" and promising to continue to "hold employers accountable if they … permit a hostile work environment" on their view of "protected grounds." Jocelyn Samuels (@JSamuelsEEOC), X (Jan. 21, 2025, 3:33 PM), https://perma.cc/E7WT-HUCD. President Trump removed then-Commissioner Burrows and then-Commissioner Samuels from the Commission, leaving EEOC with only two Commissioners—one short of a quorum. *See* EEOC, *The State of the EEOC: Frequently Asked Questions*, https://perma.cc/WQE5-CLPF (response to question #3). While EEOC remains open for business even without a quorum of Commissioners, it lacks the ability to "vote on rulemaking, issue new policies, or rescind guidance documents." *Id.* (response to question #12). Thus, the Enforcement Document remains in effect.

## ARGUMENT

This Court has jurisdiction to review the Enforcement Document, which is unlawful on multiple fronts. Because the Enforcement Document's core legal defects could not be remedied on remand, entry of summary judgment and vacatur of the problematic portions of the Enforcement Document is warranted. This Court likewise should issue declaratory and injunctive relief to prevent EEOC and related federal officials from enforcing the Enforcement Document's unlawful interpretation of Title VII against Plaintiff States' interests.

### I. Plaintiff States' Challenge Remains Live and Justiciable.

A plaintiff challenging an agency action must have constitutional standing to sue, which requires demonstrating "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008). They also only may challenge a "final" agency action,

11

meaning the agency must have completed its decision-making process and determined the plaintiffs' "rights or obligations." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citation omitted). Both prerequisites are satisfied here, President Trump's Executive Order notwithstanding.

**A. Plaintiff States have standing.**

**1.** Plaintiff States have standing as employers directly regulated by the 2024 Guidance. PI Br. 10-11; PI Reply Br. 2-3; *see also* Mem. in Supp. of Mot for Summ. J. 8-10, Dkt. #30, *Texas v. EEOC*, No. 2:24-cv-173 (N.D. Tex. Oct. 23, 2024) ("Texas Br."); Reply in Supp. of Mot for Summ. J. 2-7, Dkt. #48, *Texas v. EEOC*, No. 2:24-cv-173 (N.D. Tex. Dec. 4, 2024) ("Texas Reply"). "[T]here is ordinarily little question" that the object of a regulatory action is injured by the agency's decision, or "that a judgment" setting aside "the action will address" that injury. *Tennessee v. EEOC*, -- F.4th --, 2025 WL 556191, at *2 (8th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)). Just like the 2021 Guidance this Court enjoined, the Enforcement Document "directly interferes with Plaintiffs' sovereign authority to enforce state laws." *Tennessee I*, 615 F. Supp. 3d at 823; *see Tennessee II*, 104 F.4th at 591-95 (affirming this Court's holding that Plaintiff States' sovereign injuries supported standing). Moreover, the costs of complying with the Enforcement Document, *see* PI Br. at 11 (collecting cites), inflict further injury on Plaintiffs for purposes of Article III standing. *See Tennessee II*, 104 F.4th at 587-91; *Kentucky v. Yellen*, 54 F.4th 325, 342-43 (6th Cir. 2022). Thus, Plaintiff States "were injured by the mere issuance of the challenged guidance," and an order vacating the offending portions would remedy their harms. *Tennessee I*, 615 F. Supp. 3d at 825.

**2.** Neither President Trump's Executive Order nor DOJ's position change deprives this Court of jurisdiction. For starters, "[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Lujan*, 504 U.S. at 571 n.4 (emphasis in original) (citation omitted). "[S]ubsequent events do not deprive the court of jurisdiction." *Cleveland Branch, N.A.A.C.P. v. City of*

12

*Parma, OH*, 263 F.3d 513, 525 (6th Cir. 2001) (citation omitted). Thus, the degree to which the "Executive Order's directive to rescind the Enforcement Guidance could call into question whether Plaintiffs face a credible threat of enforcement," Jan. 23 Order 2, does not bear on the analysis of whether Plaintiff States had standing to seek vacatur and further relief at the outset of this action.

In any event, the threat of enforcement and the follow-on harms remain very real. *See, e.g.*, Joint Br. 3-6, Dkt. #53, *Texas v. EEOC*, No. 2:24-cv-173 (N.D. Tex. Feb. 10, 2025). Imminence required for Article III standing is satisfied in a pre-enforcement challenge with "an adequate showing that sometime in the relatively near future" the plaintiff will "continue" an action that "allegedly violates the law." *Tennessee II*, 104 F.4th at 589-90 (citation omitted). Here, Plaintiff States maintain laws and policies that "arguably conflict" with EEOC's interpretation of Title VII, *Tennessee I*, 615 F. Supp. 3d at 822, and Plaintiff States reasonably fear EEOC will act pursuant to the Enforcement Document.

The Enforcement Document was approved by a majority vote of the Commission, and "[a]ny modification must be approved by a majority vote of the Commission." *See* EEOC, *Enforcement Guidance on Harassment in the Workplace*, https://perma.cc/DPD5-EDYE. No vote to rescind has occurred, and such a vote is not currently possible. Thus, the Enforcement Document remains in place and is unlikely to be rescinded any time soon, as no replacement Commissioners have even been announced—let alone nominated and confirmed. Meanwhile, EEOC remains "open for business" and "continues to enforce federal antidiscrimination laws." *The State of the EEOC* (response to question #4). For example, EEOC's field offices still have "authority to issue subpoenas." *Id.* (response to question #11). EEOC also maintains its authority to adjudicate claims against state employers under the GERA. *See* 42 U.S.C. § 2000e-16c; 29 C.F.R. §§ 1603.109, 1603.304. And such enforcement is governed by the Enforcement Document, which binds EEOC employees investigating, evaluating, and adjudicating Title VII complaints. *See Kentucky v. Yellen*, 54 F.4th at 349 n.16 (accepting "as valid

13

the merits" of plaintiffs' claim for "standing purposes") (citation omitted).

Moreover, Title VII empowers a single "member of the Commission" to initiate a charge against Plaintiff States. *See* 42 U.S.C. § 2000e-5(b). Since Commissioner Kotagal voted to promulgate the Enforcement Document and signed on to a statement opposing President Trump's order to rescind it, Plaintiff States face a real risk she will initiate a single-Commissioner charge based on the Enforcement Document's flawed interpretation of Title VII. That is no small matter. Once a charge is filed, Plaintiff States must comply with burdensome investigations, including by responding to document requests, undergoing interviews, and providing a position statement. *See* EEOC, *What You Can Expect After a Charge is Filed*, https://perma.cc/C3ZC-J7KR; *see also Shell Oil*, 466 U.S. at 63-64. At the conclusion of that investigation, Plaintiff States are then subject to "conference, conciliation, and persuasion" by EEOC to address allegedly unlawful conduct, including by significantly changing workplace policies. 42 U.S.C. § 2000e-5(b). And if that fails, nothing prevents EEOC from referring the charge to DOJ. Put differently, a single Commissioner can bring to bear EEOC's investigative and enforcement powers against Plaintiff States. Even if DOJ is now disinclined to initiate litigation consistent with the Enforcement Document, Plaintiff States still face "substantial pressure" to change their state laws and must expend resources to comply with the Enforcement Document's edicts to avoid the heavy burdens EEOC itself can impose—harms this Court and the Sixth Circuit have confirmed as sufficient for Article III standing. *See Tennessee I*, 615 F. Supp. 3d at 840-41; *Kentucky v. Yellen*, 54 F.4th at 342-43.

Thus, the Executive Order does not moot Plaintiff States' claims. Because it is not "impossible" for this Court to grant effectual relief preventing EEOC's enforcement of Title VII consistent with the Enforcement Document, *see Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012), Plaintiff States retain "a concrete interest … in the outcome of this litigation, [and] the case is

not moot," *Ellis v. Railway Clerks,* 466 U.S. 435, 442 (1984). Indeed, because they seek declaratory and injunctive relief beyond vacatur of the offending portions of the Enforcement Document, Plaintiffs retain an interest in this matter even if the Enforcement Document is ultimately rescinded. EEOC "has enacted similar guidance in the past and may attempt to do so again as an end run to the Court's relief," making "a broader injunction … necessary to provide complete relief." *Texas v. Cardona*, 743 F. Supp. 3d 824, 897 (N.D. Tex. 2024). The prospect of forward-looking relief means Defendants cannot show that "it is *impossible* for a court to grant any effectual relief whatever" to Plaintiff States. *Knox*, 567 U.S. at 307. So Plaintiff States have standing to bring their claims, which remain live and ripe for judicial resolution.

**B.    The Enforcement Document is final agency action.**

The Enforcement Document is final agency action. PI Br. 9-10; PI Reply Br. 4-5; *see also* Texas Br. 10-14; Texas Reply 8-11. No one disputes that the Enforcement Document promulgated through notice-and-comment "mark[s] the consummation" of EEOC's decision-making process. *Hawkes*, 578 U.S. at 597 (citation omitted). And just like EEOC's prior attempts to impose gender identity-based accommodations on the Nation's workplaces, *see Tennessee I*, 615 F. Supp. 3d at 830-34, "legal consequences flow" from the Enforcement Document, *Hawkes*, 578 U.S. at 599 (cleaned up).

The Enforcement Document "purport[s] to speak authoritatively on specific conduct that constitutes discrimination based on sexual orientation and gender identity." *Tennessee I*, 615 F. Supp. 3d at 832. It holds itself out as "Commission-approved enforcement guidance [which] presents a legal analysis of standards of harassment and employer liability applicable to claims of harassment … enforced by the Commission." Dkt. #1-2 at 7. It commands that sex-based harassment includes harassment based on sexual orientation or gender identity, including how that identity is expressed. And it provides definitive examples of factual scenarios that would create liability for harassing conduct

based on gender identity. *See, e.g.*, *id.* at 17-18. Moreover, the Enforcement Document consolidates and replaces a bevy of EEOC's prior enforcement guidance, *id.* at 1-2, and it is meant to be a resource for "EEOC staff … that investigate, adjudicate, or litigate harassment claims," *id.* at 8.

In undertaking the pragmatic inquiry into whether an agency action is final, courts have consistently held that such features "broadly condemn[ing]" specific practices, *Texas v. EEOC*, 633 F. Supp. 3d at 840, signal a decision from which legal consequences will flow. *See, e.g.*, *Tennessee I*, 615 F. Supp. 3d at 830-34; *Tennessee II* 104 F.4th 598-601. That's because such commands create "safe harbors" on which EEOC expects employers to rely in shaping their behavior. *See Tennessee II*, 104 F.4th 598-600; *see also* Texas Br. 12-14. And because the Enforcement Document purports to clarify "to the public existing *requirements* under the law or agency policies" and to "communicate[] the Commission's position on important legal issues," Dkt. #1-2 at 2 (emphasis added), it must "bind[] agency staff and the public." *See Texas v. EEOC*, 633 F. Supp. 3d at 840; *see also Texas v. EEOC*, No. 2:21-cv-104Z, 2022 WL 22869778, at *5 (N.D. Tex. May 26, 2022) ("[H]ow could EEOC investigators and staff not consider [such instructions] *binding*?") (emphasis in original). EEOC cannot avoid this conclusion with a boilerplate disclaimer. *Tennessee I*, 615 F. Supp. 3d at 831; *Tennessee II*, 107 F.4th at 600.

## II.     The Enforcement Document Exceeds EEOC's Title VII Authority.

EEOC's "power to act and how they are to act is authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). But Title VII's bar on sex discrimination does not outlaw longstanding policies that vindicate workplace privacy or recognize the biological differences between the sexes. PI Br. 12-19; PI Reply Br. 6-7; *see also* Texas Br. 14-26; Texas Reply 12-16. And EEOC's sweeping contrary expansion of Title VII exceeds the agency's limited license to adopt procedural rules. PI Br. 19; PI Reply Br. 7-8; *see also* Texas Br. 29; Texas Reply 16-17. Both grounds mean that the Enforcement Document should be "set aside." 5 U.S.C. § 706(2)(A), (C).

16

### A. The Enforcement Document contravenes Title VII.

**1.** Title VII only prohibits sex-based *discrimination*—"intentionally treat[ing] a person worse because of sex—such as by firing the person for actions or attributes" that are "tolerate[d] in a [similarly situated] individual of another sex." *Bostock*, 590 U.S. at 658. But longstanding practices of maintaining sex-separated facilities like bathrooms, locker rooms, and changing areas do not discriminate. They simply administer the "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex" that Title VII "does not reach." *Oncale*, 523 U.S. at 81. Policies maintaining sex-segregated spaces treat similarly situated individuals the same: All men must use male facilities, all women must use female facilities, and all such facilities are generally equal. So, for example, a female employee who self-identifies as male and is required to use the women's restroom is treated no "worse than other[]" female employees. *Bostock*, 590 U.S. at 657. Nor is that employee similarly situated to male employees in using the male restroom. That same logic applies to sex-based dress codes and pronoun usage. EEOC's contrary understanding would implausibly preference "gender identity" (absent from Title VII) over sex (actually protected under Title VII). By announcing that employers can face liability even when they do not discriminate because of sex, the Enforcement Document exceeds EEOC's authority under Title VII.

If anything, EEOC's view would require employers to treat employees who identify as transgender *more* favorably than other employees by accommodating each transgender-identifying employee's self-professed gender identity without regard for other employees' safety, privacy, or First Amendment interests. But Title VII demands that workplaces be free from discrimination, not replete with "preferential treatment" to particular employees. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981). Indeed, Congress knew how to require accommodations for certain classes in Title VII, *see, e.g.*, 42 U.S.C. § 2000e(j) (mandating religious accommodations), and has declined to do so

17

based on persons' gender identities. Congress's failure to adopt this "ready alternative" of requiring gender identity-based accommodations indicates that Congress did not in fact want what EEOC now claims. *Advoc. Health Care Net. v. Stapleton*, 581 U.S. 468, 477 (2017).

**2.** *Bostock* does not require otherwise. There the Court was only concerned with—and thus its holding only addresses—allegations of discriminatory termination where an employer fires a "person for traits or actions it would not have questioned in members of a different sex." *See* 590 U.S. at 651-52. The Court "d[id] not purport to address bathrooms, locker rooms, or anything else of the kind." *Id.* at 681. The Court "*presume[d]* there will be Title VII cases where the protected class 'sex' may not reach particular conduct." *Texas v. EEOC*, 633 F. Supp. 3d at 834 (emphasis in original). Courts thus uniformly rejected EEOC's argument that *Bostock* supported the 2021 Guidance's Title VII analysis. *Tennessee I*, 615 F. Supp. 3d at 833 ("*Bostock* does not require [EEOC's] interpretation[] of Title VII[.]"); *Texas v. EEOC*, 633 F. Supp. 3d at 840 (similar).

The Enforcement Document concedes that "*Bostock* itself concerned allegations of discriminatory discharge" but claims that the Supreme Court's reasoning "logically extends" to other employment activities, like bathroom and pronoun policies. Dkt. #1-2 at 110. Not so. The Court in *Bostock* proceeded "on the assumption that 'sex' signified … biological distinctions between male and female." 590 U.S. at 655. So, it did not redefine "sex" in Title VII to encompass gender identity. The Court merely held that an employment decision "based on homosexuality or transgender status necessarily entails discrimination based on sex"—at least when it is "because of" "traits or actions" that the employer would "tolerate[]" in a person of the opposite sex. *Id.*; *see Cardona*, 743 F.Supp.3d at 881. But while "[a]n individual's homosexuality or transgender status is not relevant to employment decisions," *Bostock*, 590 U.S. at 660, the biological differences that define "sex" are the core basis for things like sex-segregated bathrooms, *see Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (collecting cites).

18

Ultimately, *Bostock*'s sex-means-sex logic *confirms* that separate bathrooms and changing facilities for men and women are lawful. *Bostock*'s core holding is that firing an employee because they are homosexual or identify as transgender discriminates against that employee because it treats that individual worse than others who are similarly situated. *See* 590 U.S. at 669. But as discussed, *supra* 17-18, that is not the case with maintaining sex-segregated spaces. Indeed, counsel for the plaintiffs in *Bostock* agreed that such policies do not conflict with Title VII because those policies do not subject any individual to a disadvantage and are thus not discriminatory. *See* PI Br. 14 (collecting cites).

EEOC, if anything, "misread[s] *Bostock* by melding 'status' and 'conduct' into one catchall protected class covering all conduct correlating to 'sexual orientation' and 'gender identity.'" *Texas v. EEOC*, 633 F. Supp. 3d at 831. The Court only addressed "homosexuality" and "transgender status," *Bostock*, 590 U.S. at 669—which are distinct concepts from "sexual orientation" and "gender identity" in important ways. For example, transgender status, as *Bostock* understood it, is "inextricably bound up with sex" such that treating a person who identifies as transgender differently "penalizes a person identified as male at birth for traits or actions … tolerate[d] in an employee identified as female at birth." *Id.* at 660-61. Gender identity, by contrast, is much more expansive and includes many identities that fall entirely outside the biological binary of male and female. *See, e.g.*, Human Rights Campaign, Glossary of Terms, https://perma.cc/4UYM-ZW3Q ("Non-binary people may identify as being both a man and a woman, somewhere in between, or as falling completely outside these categories."). Such nonbinary identities are not "inextricably bound up with sex" in the way *Bostock* cast "transgender status"—further undercutting *Bostock*'s applicability here.

Plus, not all conduct associated with homosexuality or transgender status is inextricably bound up with sex. *See Texas v. EEOC*, 633 F. Supp. 3d at 831-33. Again, *Bostock* "*presumes* there will be Title VII cases where the protected class 'sex' may not reach particular conduct," *id.* at 834 (emphasis in

19

original), and the Court did not extend protections to things that only "are related to sex in some vague sense." *Bostock*, 590 U.S. at 661; *see also id.* at 694-95 (Alito, J., dissenting). After all, Title VII "requires neither asexuality nor androgyny in the workplace." *Oncale*, 523 U.S. at 81. *Bostock* does not support the contrary position, as the Court's only mention of accommodations associated with conduct—like bathroom usage—was in declining to consider them. 590 U.S. at 681.

**3.** Nor can EEOC draw support from the decisions it cites beyond *Bostock*. For starters, only the U.S. Supreme Court's construction of Title VII is authoritative, as EEOC concedes. *See Lavern B., Complainant*, EEOC DOC 0720130029, 2015 WL 780702, at *11 (Feb. 12, 2015). So, EEOC's own administrative decisions "are not binding authority and cannot be considered definitive interpretations of Title VII." *Tennessee I*, 615 F. Supp. 3d at 840 n.17. And while courts "may rely on EEOC decisions as persuasive authority," the persuasiveness of such decisions is diminished when, as here, they pertain to federal employers, which are subject to a different statutory standard than private or state employers. *Compare* 42 U.S.C. § 2000e-16(a) *with* 42 U.S.C. § 2000e-2(a)(1).

The smattering of district court decisions EEOC relies on outside of *Bostock* to support its expansion of Title VII liability are also not binding here. Nor are they persuasive on their own terms. *See* PI Br. 15-17; PI Reply Br. 6. Title IX caselaw also cannot sustain EEOC's flawed reading of Title VII. Differences between the language of the statutes "supply an initial reason why one test does not apply to the other." *Skrmetti*, 83 F.4th at 484; *see also Meriwether*, 992 F.3d at 510 n.4. And the Sixth Circuit, the Supreme Court, and a swath of district courts have issued decisions indicating that *Bostock* does not compel gender identity-related accommodations under Title IX. *Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880, at *3 (6th Cir. July 17, 2024); *U.S. Dep't of Educ. v. Louisiana*, 603 U.S. 866, 867 (2024); *see Tennessee v. Cardona*, No. 2:24-cv-72, 2025 WL 62795, at *7 (E.D. Ky. Jan. 9, 2025) (collecting cases).

20

Ultimately, whatever limited authority EEOC can cobble together for its interpretation of Title VII, "until the Sixth Circuit or the Supreme Court recognizes … that Title VII prohibits discrimination based on sexual orientation and gender identity with respect to bathrooms, locker rooms, and dress codes[,] such rights and obligations have not been established under federal law." *Tennessee I*, 615 F. Supp. 3d at 840 n.17. That has not happened. Thus, like the 2021 Guidance, the Enforcement Document "advance[s] *new* interpretations" of Title VII and imposes "*new* legal obligations." *Id.* at 833.

**4.** The major questions doctrine and the Enforcement Document's significant constitutional flaws put to bed any doubt that EEOC has exceeded its statutory authority.

*Major questions*. The Enforcement Document purports to resolve questions "of vast economic and political significance" by requiring gender-identity accommodations in workplaces across the nation. *West Virginia v. EPA*, 597 U.S. 697, 716 (2022). Such massive authority is not hidden "in mouse-holes." *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 127 (2016) (citation omitted). But EEOC cannot "point to 'clear congressional authorization' for the power it claims," *West Virginia*, 597 U.S. at 723, because nothing in Title VII purports to authorize the Commission's gender identity-accommodation regime. It is up to clearly expressed "legislative action," not an unelected and unaccountable EEOC, to resolve the "fraught line-drawing dilemmas" associated with balancing gender-identity accommodations, employee health, welfare, and safety, and freedom of speech, conscience, and religion. *See Skrmetti*, 83 F.4th at 486-87.

*Constitutional avoidance*. EEOC's Enforcement Document also raises grave constitutional problems.[2] EEOC's interpretation of Title VII exceeds the power of Congress or the agency itself to

---

[2] At the time EEOC promulgated the Enforcement Document, the Commissioners purported to enjoy for-cause-removal protections in violation of Article II's vesting of the executive power exclusively in the President. *See* Compl. ¶¶ 153-59. The Plaintiff States preserve the argument that the removal violation independently renders the Enforcement Document invalid.

21

abrogate state sovereign immunity. PI Br. 19-21; PI Reply Br. 8. It unlawfully forces States to violate the First Amendment rights of their employees. PI Br. 21-22; PI Reply Br. 8. But "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [a court's] duty is to adopt the latter." *United States ex rel. Att'y Gen. v. Del. & Hudson Co.*, 213 U.S. 366, 408 (1909). The constitutional-doubt canon thus forecloses the Enforcement Document's unprecedented expansion of Title VII. It should be set aside as exceeding EEOC's "statutory jurisdiction [or] authority," or being "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (C). Alternatively, the constitutional defects warrant vacating the Enforcement Document since agency action that is "contrary to constitutional right [or] power" must be set aside. 5 U.S.C. § 706(2)(B).

### B. The Enforcement Document exceeds EEOC's rulemaking authority.

EEOC's Enforcement Document also exceeds the agency's limited rulemaking power. PI Br. 19; PI Reply Br. 7-8; *see also* Texas Br. 29; Texas Reply 16-17. Congress authorized EEOC to adopt only "*procedural regulations*" to carry out Title VII. 42 U.S.C. § 2000e-12(a) (emphasis added). EEOC "may not promulgate substantive rules." *Texas v. EEOC*, 933 F.3d 433, 439 (5th Cir. 2019). Yet by expanding—rather than implementing—Title VII, EEOC's new guidance is a substantive rule because it alters employers' obligations under the statute, just like the 2021 Guidance did. *See Tennessee I*, 615 F. Supp. 3d at 832; *see also Texas v. EEOC*, 633 F. Supp. 3d at 840. Because "Title VII and precedent confirm that EEOC lacks authority to promulgate substantive rules," the Enforcement Document is "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C).

### III. The Enforcement Document Violates the APA.

An agency action must stem from "reasoned decisionmaking," or else it will be set aside as "arbitrary and capricious." *See Atrium Med. Ctr. v. U.S. Dep't of Health & Human Servs.*, 766 F.3d 560,

22

567 (6th Cir. 2014) (citation omitted). Thus, in crafting a rule, an agency may not "rel[y] on factors which Congress has not intended it to consider" or "entirely fail[] to consider an important aspect of the problem." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Yet here, EEOC failed to consider or address the long-recognized privacy and safety justifications for sex-segregated spaces. PI Br. 22-23; PI Reply Br. 8-9; *see also* Texas Br. 26-27; Texas Reply Br. 17-18. EEOC also ignored the heavy implementation burdens that the Enforcement Document places on employers. PI Br. 23; PI Reply Br. 8-9; *see also* Texas Br. 27-28; Texas Reply Br. 17-18. Finally, the Enforcement Document does not account for its disruption to our federal system. PI Br. 23; PI Reply Br. 8-9; *see also* Texas Br. 27-28; Texas Reply Br. 17-18. The APA requires more.

## IV. Plaintiff States Are Entitled to Vacatur, a Permanent Injunction, and Declaratory Relief.

### A. This Court should vacate the offending parts of the Enforcement Document.

Vacatur is the default remedy under the APA. *Kentucky v. EPA*, 123 F.4th 447, 473 (6th Cir. 2024). A vacatur order—unlike an injunction and other in personam relief—acts on the Enforcement Document itself by denying it legally operative effect and treating it as void as to all regulated parties. This "ordinary result" should apply here given the significant legal flaws in the Enforcement Document's interpretation of Title VII. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2462-64, 2467-70 (2024) (Kavanaugh, J., concurring) (collecting authorities).

Remand to the agency without vacatur is "rare." *Kentucky v. EPA*, 123 F.4th at 472 (citation omitted). Courts considering the propriety of such relief weigh "two primary factors": First, how "serious" was the agency's error? And second, how "disruptive" would vacatur be? *Id.* At bottom, "the proper remedy will depend on all the equities." *Id.* at 473.

This case is not the rare exception. EEOC's lack of statutory authority to adopt the Enforcement Document renders it invalid and requires vacatur since an "illegitimate agency action is void *ab*

23

*initio*," regardless of further agency justification. *See Cardona*, 743 F. Supp. 3d at 893. And "[b]y relying so heavily" on its *Bostock* reasoning, the Enforcement Document's gender-identity accommodations were "constructed on a foundation of quicksand" that no amount of additional analysis could salvage. *Tennessee v. Cardona*, No. CV 2:24-072-DCR, 2024 WL 3631032, at *3 (E.D. Ky. July 10, 2024). The same goes for EEOC's pervasive APA and constitutional faults, which render the document "invalid." *See Tennessee v. Cardona*, 737 F. Supp. 3d 510, 570 (E.D. Ky. 2024). Nor can EEOC show that vacatur of the Enforcement Document's gender-identity mandates "would have any unusually disruptive effects." *Kentucky v. EPA*, 123 F.4th at 473. Such relief would operate on only a small portion of the Enforcement Document, leaving almost all of EEOC's policies about workplace harassment in place. And EEOC cannot credibly claim an interest in enforcing Title VII contrary to President Trump's Executive Order. Thus, the equities favor vacatur here.

**B. This Court should also grant declaratory and injunctive relief to the States.**

Plaintiff States also are entitled to declaratory and injunctive relief to help ensure that the Department does not enforce its unlawful reading of Title VII against their interests.

*Declaratory relief.* Both the Declaratory Judgment Act and the APA contemplate declaratory relief that establishes the legal rights of interested parties. 28 U.S.C. § 2201(a); 5 U.S.C. § 703. "The existence of another adequate remedy," moreover, "does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Here, Plaintiff States have established that the Enforcement Document and its statutory interpretations violate Title VII, the APA, and the U.S. Constitution. This Court should declare that (1) the Enforcement Document is unlawful because Title VII's prohibition on "sex" discrimination does not require gender identity-related accommodations in the workplace; (2) the Enforcement Document is unlawful because it is arbitrary and capricious; (3) and the Enforcement Document is unlawful because it violates the U.S. Constitution.

24

*Injunctive relief.* This Court also should permanently enjoin enforcement of the Enforcement Document's unlawful mandates and interpretations against Plaintiff States. As with preliminary relief, a plaintiff seeking a permanent injunction "must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Plaintiff States satisfy each factor. As already explained, Plaintiff States's claims are meritorious. *Supra* 16-23. Plaintiff States will suffer irreparable sovereign and financial harms absent injunctive relief. PI Br. 23-25; PI Reply Br. 9; *see also* Texas Br. 31-33. And the balance of equities and public interest favor an injunction. PI Br. 23-25; PI Reply Br. 9; Texas Br. 33-34. To protect Plaintiff States' interests, this Court should permanently enjoin EEOC and other responsible federal officials from enforcing the Enforcement Document's gender identity-based accommodations and its *ultra vires* interpretation of Title VII.

## CONCLUSION

The Court should grant Plaintiff States' motion for summary judgment. It should declare the Enforcement Document and its interpretations and challenged applications of Title VII unlawful. The Court should also vacate the portions of the Enforcement Document requiring gender-identity accommodations and permanently enjoin EEOC and other responsible officials from enforcing its unlawful interpretations of Title VII against Plaintiff States.

25

Dated: March 14, 2025

Respectfully Submitted,

*/s/ Harrison Gray Kilgore*
WHITNEY HERMANDORFER
  Director of Strategic Litigation
STEVEN J. GRIFFIN
  Senior Counsel for Strategic Litigation
HARRISON GRAY KILGORE
  Strategic Litigation Counsel and
  Assistant Solicitor General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-8726
Whitney.Hermandorfer@ag.tn.gov
Steven.Griffin@ag.tn.gov
Harrison.Kilgore@ag.tn.gov
*Counsel for Plaintiff the State of Tennessee*

26

STEVE MARSHALL
    Attorney General

/s/ *Edmund G. LaCour, Jr.*
EDMUND G. LACOUR, JR.*
    Solicitor General
OFFICE OF THE ALABAMA
ATTORNEY GENERAL
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov
*Counsel for Plaintiff State of Alabama*

TREG TAYLOR
    Attorney General

/s/ *Cori Mills*
CORI MILLS*
    Deputy Attorney General, Civil Division
OFFICE OF THE ALASKA ATTORNEY GENERAL
Alaska Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501
(907) 465-2132
Cori.Mills@alaska.gov
*Counsel for Plaintiff State of Alaska*

TIM GRIFFIN
    Attorney General

/s/ *Autumn Patterson*
AUTUMN PATTERSON**
    Solicitor General
OFFICE OF THE ARKANSAS
    ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-6302
Autumn.Patterson@arkansasag.gov
*Counsel for Plaintiff State of Arkansas*

CHRISTOPHER CARR
    Attorney General

/s/ *Stephen Petrany*
STEPHEN PETRANY*
    Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
GEORGIA
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3408
Spetrany@law.ga.gov
*Counsel for Plaintiff State of Georgia*

THEODORE E. ROKITA
    Attorney General

/s/ *James A. Barta*
JAMES A. BARTA*
    Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
INDIANA
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, Indiana 46204
(317) 232-0709
James.Barta@atg.in.gov
*Counsel for Plaintiff State of Indiana*

BRENNA BIRD
    Attorney General

/s/ *Eric H. Wessan*
ERIC H. WESSAN*
    Solicitor General
OFFICE OF THE IOWA ATTORNEY GENERAL
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
Eric.Wessan@ag.iowa.gov
*Counsel for Plaintiff State of Iowa*

27

KRIS W. KOBACH
  Attorney General

*/s/ James Rodriguez*
JAMES RODRIGUEZ*
  Deputy Attorney General
OFFICE OF THE KANSAS ATTORNEY GENERAL
120 SW 10th Ave.
Topeka, KS 66612
(785) 296-7109
Jay.Rodriguez@ag.ks.gov
*Counsel for Plaintiff State of Kansas*

LYNN FITCH
  Attorney General

*/s/ Justin L. Matheny*
Justin L. Matheny*
  Deputy Solicitor General
OFFICE OF THE MISSISSIPPI ATTORNEY
GENERAL
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3825
Justin.Matheny@ago.ms.gov
*Counsel for Plaintiff State of Mississippi*

MICHAEL T. HILGERS
  Attorney General

*/s/ Lincoln J. Korell*
LINCOLN J. KORELL*
  Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
NEBRASKA
2115 State Capitol
Lincoln, Nebraska 68509
lincoln.korell@nebraska.gov
*Counsel for Plaintiff State of Nebraska*

RUSSELL COLEMAN
  Attorney General

*/s/ Justin D. Clark*
JUSTIN D. CLARK*
  Civil Chief
AARON SILLETTO*
  Executive Director, Office of Civil and Environmental
KENTUCKY OFFICE OF THE ATTORNEY
GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Justind.Clark@ky.gov
Aaron.Silletto@ky.gov
*Counsel for Plaintiff Commonwealth of Kentucky*

ANDREW BAILEY
  Attorney General

*/s/ Joshua M. Divine*
JOSHUA M. DIVINE*
  Solicitor General
MISSOURI ATTORNEY GENERAL'S OFFICE
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
josh.divine@ago.mo.gov
*Counsel for Plaintiff State of Missouri*

DAVE YOST
  Attorney General

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER*
  Solicitor General
OFFICE OF THE OHIO ATTORNEY GENERAL
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
thomas.gaiser@ohioago.gov
*Counsel for the State of Ohio*

28

ALAN WILSON
   Attorney General

/s/ Thomas T. Hydrick
THOMAS T. HYDRICK*
   Assistant Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
OF SOUTH CAROLINA
1000 Assembly Street
Columbia, SC 29201
(803) 734-4127
Thomashydrick@scag.gov
*Counsel for Plaintiff State of South Carolina*


SEAN REYES
   Attorney General

/s/ Stanford Purser
STANFORD PURSER*
   Solicitor General
UTAH ATTORNEY GENERAL'S OFFICE
160 East 300 South, 6th floor
PO Box 140856
Salt Lake City, UT 84114-0856
(801) 366-0100
Spurser@agutah.gov
*Counsel for Plaintiff State of Utah*


JOHN B. MCCUSKEY
   Attorney General

/s/ Michael R. Williams
MICHAEL R. WILLIAMS*
   Solicitor General
OFFICE OF THE WEST VIRGINIA ATTORNEY
GENERAL
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
(304) 558-2021
Michael.R.Williams@wvago.gov
*Counsel for Plaintiff State of West Virginia*


MARTY J. JACKLEY
   Attorney General

/s/ Jonathan K. Van Patten
JONATHAN K. VAN PATTEN *
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
STATE OF SOUTH DAKOTA
1302 E. Hwy. 14, Suite #1
Pierre, SD  57501
(605) 773-3215
Jonathan.Vanpatten@state.sd.us
*Counsel for Plaintiff State of South Dakota*


JASON S. MIYARES
   Attorney General

/s/ Kevin M. Gallagher
KEVIN M. GALLAGHER*
   Principal Deputy Solicitor General
VIRGINIA ATTORNEY GENERAL'S OFFICE
202 North 9th Street
Richmond, Virginia 23219
(805) 786-2071
kgallagher@oag.state.va.us
*Counsel for the Commonwealth of Virgini*


**\*  Admitted Pro Hac Vice**
**\*\* Application for Admission Pro**
**Hac Vice Forthcoming**


29

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2025, a true and correct copy of the foregoing document

was served via the Court's electronic filing system to the following counsel of record.

Jacob S. Siler
Allyson R. Scher
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 353-4556
Jacob.s.siler@usdoj.gov
Allyson.r.scher@usdoj.gov
*Counsel for Defendants*

                                           */s/ Harrison Gray Kilgore*
                                           HARRISON GRAY KILGORE
                                           *Counsel for Plaintiff the State of Tennessee*