# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, STATE OF ALABAMA, STATE OF ALASKA, STATE OF ARKANSAS, STATE OF GEORGIA, STATE OF INDIANA, STATE OF IOWA, STATE OF KANSAS, COMMONWEALTH OF KENTUCKY, STATE OF MISSISSIPPI, STATE OF MISSOURI, STATE OF NEBRASKA, STATE OF OHIO, STATE OF SOUTH CAROLINA, STATE OF SOUTH DAKOTA, STATE OF UTAH, COMMONWEALTH OF VIRGINIA, STATE OF WEST VIRGINIA, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | Civil Action No. 3:24-cv-00224<br>Judge Charles E. Atchley, Jr.<br>Magistrate Judge Debra C. Poplin |
| v. | ) ) ) ) | |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; ANDREA LUCAS, in her official capacity as Acting Chair of the Equal Employment Opportunity Commission; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her official capacity as Attorney General of the United States; and HARMEET DHILLON, in her official capacity as Assistant Attorney General for Civil Rights at the United States Department of Justice, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

---

## COMBINED REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, VACATUR, AND A PERMANENT INJUNCTION AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

---

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................. 2

I.     The States' Claims Are Justiciable ............................................................................. 2

     A.     The States have standing. ............................................................................... 3

     B.     The Enforcement Document is final agency action. .................................... 9

II.    The Enforcement Document Is Unlawful. ................................................................ 12

III.   The States Are Entitled To Vacatur, Declaratory Relief, And A Permanent Injunction. ....... 12

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Ohio, Inc. v. Taft,*
  385 F.3d 641 (6th Cir. 2004) ...................................................................................... 8

*Adkins v. Marathon Petrol. Co., LP,*
  105 F.4th 841 (6th Cir. 2024) .................................................................................... 12

*Bennett v. Spears,*
  520 U.S. 154 (1997) ............................................................................................ 2, 8, 9

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
  98 F.4th 220 (5th Cir. 2024) ....................................................................................... 8

*Cath. Benefits Ass'n v. Burrows,*
  732 F. Supp. 3d 1014 (D.N.D. 2024) ...................................................................... 12

*Christian Healthcare Ctrs., Inc. v. Nessel,*
  117 F.4th 826 (6th Cir. 2024) ..................................................................................... 7

*Czyzewski v. Jevic Holding Corp.,*
  580 U.S. 451 (2017) .................................................................................................... 8

*Duarte ex rel. Duarte v. City of Lewisville,*
  759 F.3d 514 (5th Cir. 2014) ...................................................................................... 9

*FDA v. All. For Hippocratic Med.,*
  602 U.S. 367 (2024) ................................................................................................ 3, 4

*Gill v. Whitford,*
  585 U.S. 48 (2018) .................................................................................................... 12

*Kentucky v. Yellen,*
  54 F.4th 325 (6th Cir. 2022) ....................................................................................... 6

*Neese v. Becerra,*
  No. 2:21-cv-163, 2022 WL 1265925 (N.D. Tex. Apr. 26, 2022) .............................. 10

*Rest. L. Ctr. v. U.S. Dep't of Lab.,*
  66 F.4th 593 (5th Cir. 2023) .................................................................................... 7, 8

*Speech First, Inc. v. Schlissel,*
  939 F.3d 756 (6th Cir. 2019) .................................................................................... 10

*Tenn. Conf. of the NAACP v. Lee,*
    105 F.4th 888 (6th Cir. 2024) ........................................................................................................7

*Tennessee v. Dep't of Educ.,*
    615 F. Supp. 3d 807 (E.D. Tenn. 2022) ................................................................................*passim*

*Tennessee v. Dep't of Educ.,*
    104 F.4th 577 (6th Cir. 2024) .............................................................................................*passim*

*Tennessee v. EEOC,*
    129 F.4th 452 (8th Cir. 2025) ........................................................................................................2, 8

*Texas v. Cardona,*
    743 F. Supp. 3d 824 (N.D. Tex. 2024) ...............................................................................12, 13

*Texas v. EEOC,*
    633 F. Supp. 3d 824 (N.D. Tex. 2022) ......................................................................................3

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ...................................................................................................11, 12

*Texas v. EEOC,*
    No. 2:24-cv-173-Z, 2025 WL 1414332 (N.D. Tex. May 15, 2025) ................................*passim*

*Texas v. EEOC,*
    No. 2:21-cv-194-Z, 2022 WL 22869778 (N.D. Tex. May 26, 2022) ...........................11, 12

*Texas v. United States,*
    201 F. Supp. 3d 810 (N.D. Tex. 2016) ......................................................................................3

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ................................................................................................................3, 5, 8

## Statutes & Regulations

5 U.S.C. § 706 ..............................................................................................................................11

42 U.S.C. § 2000e-5(b) .................................................................................................................6

42 U.S.C. § 2000e-5(f)(1) .....................................................................................................*passim*

2025 Tenn. Pub. Acts, ch. 453 ...................................................................................................4

29 C.F.R. § 1695.2(d) ..................................................................................................................11

29 C.F.R. § 1695.6 .......................................................................................................................11

**Other Authorities**

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ...........................................1

*Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*, Exec. Order No. 13,988, 86 Fed. Reg. 7023, 7023 (Jan. 20, 2021).......................................................8

Pamela S. Karlan, Principal Deputy Assistant Attorney General, Civ. Rts. Div., U.S. Dep't of Justice, Memorandum, *Application of* Bostock v. Clayton County *to Title IX of the Education Amendments of 1972* (Mar. 26, 2021) ..........................................................................8

iv

## INTRODUCTION

All parties now agree that EEOC's Enforcement Document misinterprets Title VII to the extent it requires gender identity-based workplace accommodations. Indeed, Defendants do not even defend the Enforcement Document on the merits because the United States has adopted "essentially the same legal interpretation" of Title VII that the "Plaintiff States advance in this litigation." *See* Opp. 1, 4, 7. The parties also agree that "the States' claim against the EEOC" is not "moot." *Id.* at 10 n.2. Notwithstanding President Trump's day-one Executive Order *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ("*Defending Women* EO"), the Enforcement Document's "injurious effect" on Plaintiff States "remains until it is rescinded." *See* Opp. 10 n.2. So the only question for this Court is whether the legally erroneous Enforcement Document should remain on the books for individual Commissioners and EEOC staff to wield against the States. As a federal district court in Texas recognized just yesterday, it should not. *Texas v. EEOC*, No. 2:24-cv-173-Z, 2025 WL 1414332 (N.D. Tex. May 15, 2025) ("*Texas*").

Yet Defendants argue that threshold justiciability issues prevent action against the Enforcement Document until new Commissioners are nominated, confirmed, and presumably vote to rescind. There is no need to wait for eventualities. This Court can simply follow its own lead regarding standing and reviewability. *See Tennessee v. Dep't of Educ.*, 615 F. Supp. 3d 807, 820-25, 830-34 (E.D. Tenn. 2022) ("*Tennessee I*"), *affirmed* 104 F.4th 577 (6th Cir. 2024) ("*Tennessee II*"). Plaintiff States have standing as regulated entities that suffer both sovereign and compliance-costs harms from the Enforcement Document's workplace mandates. And because the Enforcement Document advances a new (and erroneous) interpretation of Title VII that imposes new legal obligations on regulated entities, it constitutes reviewable final agency action.

All parties also appear to agree that, once Plaintiff States pass those threshold barriers,

1

declaratory relief and vacatur of the portions of the Enforcement Document that impose gender-identity based workplace accommodations are appropriate. *See* Opp. 16-18. But even if such relief would protect Plaintiff States' interests, broader injunctive relief is warranted to ensure that future administrations do not attempt to circumvent this Court's order.

## ARGUMENT

### I.    The States' Claims Are Justiciable.

As employers subject to Title VII, Plaintiff States have an "easy" case for standing. *See FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 382 (2024). The additional "regulatory burden[s]" imposed by the Enforcement Document are injury enough. *Tennessee v. EEOC*, 129 F.4th 452, 458 (8th Cir. 2025). But, as this Court has recognized, the fallout from the Enforcement Document's reordering of workplaces across the nation also harms Plaintiff States' sovereignty, *Tennessee I*, 615 F. Supp. 3d at 823, and implementing the Enforcement Document's mandates "produces the irreparable harm of nonrecoverable compliance costs" given the federal government's sovereign immunity, *see Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 221 (1994) (Scalia, J., concurring in part). So Plaintiff States have standing in spades. States' Br. 12; *see Texas*, 2025 WL 1414332, at *7-8.

To try to avoid this triple-headed showing, Defendants (at 6-11) conflate the standing inquiry with the question of "final agency action." They argue that the Enforcement Document they are fighting to preserve—despite its admitted flaws—has no legal consequence and therefore does not cause Plaintiff States any injury. But Defendants cannot so easily sidestep the recognized distinction between the constitutional standing and "final agency action" inquiries. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *Tennessee II*, 104 F.4th at 587-603; *Tennessee I*, 615 F. Supp. 3d at 820-25, 830-34. The Enforcement Document is EEOC's third go at imposing nationwide gender identity-based work-place accommodations, advancing the same "*new* interpretation[] of Title[] VII" and imposing the same "*new* legal obligations on regulated entities" that this Court and others previously held constituted

2

final agency action. *See Tennessee I*, 615 F. Supp. 3d at 833 (emphases in original); *Texas v. EEOC*, 633 F. Supp. 3d 824, 839-41 (N.D. Tex. 2022); *see also Texas v. United States*, 201 F. Supp. 3d 810, 824-25 (N.D. Tex. 2016). Indeed, the only conclusion that can be drawn from the Enforcement Document's "mandatory language, hypotheticals, and safe harbors" is that the document "determines the legal obligations of employers in navigating accommodation requests from transgender employees." *Texas*, 2025 WL 1414332, at *5. Thus, Defendants' final-agency-action arguments (at 12-16) fail, simultaneously undercutting their standing response. Plaintiff States' claims are justiciable. States' Br. 11-16; *see Texas*, 2025 WL 1414332, at *4-9.

## A. The States have standing.

As before, *see Tennessee I*, 615 F. Supp. 3d at 820-25, Plaintiff States have Article III standing to challenge EEOC's guidance because they face sovereign and fiscal harms traceable to the Enforcement Document and remediable by a favorable decision from this Court. *See* States' Br. 12. Indeed, as employers directly regulated by the Enforcement Document's interpretation of Title VII, Plaintiff States' standing is "easy to establish." *All. for Hippocratic Med.*, 602 U.S. at 382. Defendants' counterarguments (at 6-11) are unavailing.

*First*, Defendants argue (at 7-8) that Plaintiff States fail to identify state laws that conflict with the gender-identity accommodations required by the Enforcement Document. But, as Plaintiff States have explained, *see* States' Br. 12; Compl. ¶¶ 102-115, the affected state laws are the same ones that this Court held "plausibl[y] conflict[ed]" with the prior iteration of EEOC's mandates. *Tennessee I*, 615 F. Supp. 3d at 822. For example, Tennessee "has a statute providing public school students, teachers, and employees with a cause of action against a school that intentionally allows a member of the opposite sex to enter a multi-occupancy restroom or changing facility while other persons are present" (detailed at Compl. ¶ 103), and that statute is irreconcilable with the Enforcement Document's interpretation of Title VII as requiring that "employers … allow an individual to access a bathroom, locker

3

room, or shower that corresponds to their gender identity." *Id.* at 823 (cleaned up). The Enforcement Document's mandates similarly conflict with Tennessee's statutory protections for the use of sex-based pronouns in certain contexts. Compl. ¶ 112. And Tennessee recently amended a suite of statutes to provide even greater protection for employees' use of biologically accurate pronouns. 2025 Tenn. Pub. Acts, ch. 453 §§ 1, 2, 3 (Exhibit L).

At minimum, the Enforcement Document appears to deem otherwise protected conduct as contributing to "unlawful sex discrimination under federal law." *Tennessee I*, 615 F. Supp. 3d at 823. Since Plaintiff States "cannot continue regulating pursuant to their state laws while simultaneously complying" with the Enforcement Document's mandates, they "must choose between the threat of legal consequences … or altering their state laws." *Id.* As this Court and "other[s] … have recognized, being left to such an untenable choice inflicts substantial pressure on Plaintiffs to change their state laws—an intrusion sufficient to constitute an injury for standing purposes." *Id.* Contra Defendants (at 7), it makes no difference that *Tennessee I* "addressed distinct agency documents" because this Court applied its sovereign-harm analysis equally to the Department of Education's Title IX guidance and to EEOC's Technical Assistance Document, which imposed the same gender-identity accommodations as the Enforcement Document. *See id.* at 821-25.

*Second*, Defendants deny (at 8) that Plaintiff States will suffer compliance costs that "almost always" accrue when a regulated entity must "comply[] with a regulation later held invalid." *Thunder Basin*, 510 U.S. at 220-21 (Scalia, J., concurring in part). But Plaintiff States have explained that they do not currently have policies consistent with the gender-identity accommodations required by the Enforcement Document—because such accommodations, in many instances, conflict with state laws. *See, e.g.*, ECF No. 33-3 ¶¶ 7-8. Plaintiff States thus have "established standing based," at minimum, on "omissions," as the "revising, updating, and generating of new policies, posters, manuals, and trainings" detailed in Plaintiff States' declarations "establish[] a concrete injury in fact." *See Texas*, 2025

4

WL 1414332, at *8. Indeed, a case-by-case approach may not suffice under the Enforcement Document's standards, forcing Plaintiff States "to devote significant time and resources" to evaluating their policies for potential "revis[ion]." ECF No. 33-3 ¶ 10. After all, the Enforcement Document unambiguously states that harassing conduct "*includes*" denying access to bathrooms based on gender identity and refusing to use preferred pronouns. ECF No. 1-2 at 17 (emphasis added). And it claims that telling an employee to wear sex-specific clothes to work "is" harassing conduct. *Id.* at 17-18. This "*mandatory* phrasing … effectively bind[s] the [EEOC] to particular legal positions from which legal consequences flow." *See Texas*, 2025 WL 1414332, at *5 (emphasis in original). So the current practice in some Plaintiff States to "work with all affected employees" may not be sufficient to ward off a burdensome EEOC investigation, particularly when those involved cannot reach an agreed solution. Opp. 8 (citations omitted). And any necessary policy revisions would also require States "to update or develop new training programs and materials." *See, e.g.*, ECF No. 33-3 ¶ 11. These are classic compliance costs that "are a recognized harm for purposes of Article III." *See Kentucky v. Yellen*, 54 F.4th 325, 342 (6th Cir. 2022); *see also Texas*, 2025 WL 1414332, at *7-8.

Contra Defendants (at 8-9), these compliance costs are necessary to head off "a credible threat of enforcement." Defendants attempt to frame Title VII enforcement as limited to DOJ-led litigation, Opp. 9, but that ignores the pain that a single EEOC Commissioner can inflict. *See* States' Br. 14. A single member of the Commission may "initiate a charge," 42 U.S.C. § 2000e-5(b), triggering a cascade of time-consuming, resource-intensive procedures. *See* Decl. of Donovan Haynes (Exhibit M).[1] For

---

[1] Plaintiffs regularly file, and courts routinely approve, supplemental declarations in response to particular opposition points or in support of injunctive relief. *See, e.g.*, *Tennessee v. Cardona*, No. 2:24-cv-72, ECF No. 94 (E.D. Ky. June 7, 2024) (allowing leave to file supplemental declaration rebutting lack-of-harm argument); *Bingham v. Root*, No. 6:22-cv-00094, ECF No. 15-1 (E.D. Ky. July 11, 2022) (supplemental declaration rebutting claim that plaintiff had not established a preliminary-injunction factor); *MxPx Global Enters. v. Tooth & Nail Record*, No. 3:01-cv-00377, ECF No. 31 (M.D. Tenn. May 30, 2001) (granting plaintiffs leave to file reply and additional declarations in support of their preliminary injunction motion); *cf.* LR7.1(a).

5

example, state agencies responding to a new EEOC charge often must engage in significant investigation that requires interviewing relevant employees and compiling relevant documents. *Id.* ¶¶ 6-10, 17-22. This process requires significant coordination within the state agency charged with a hostile work environment, as well as coordination with other state agencies and EEOC investigators. *See id.* ¶¶ 11-16. These and other steps necessary to respond to an EEOC charge involve significant employee time and resources. *See id.* ¶¶ 3, 8, 20.

And there is a credible threat of commissioner-led enforcement against the States. "Commissioner Kotagal is still a Commissioner." *Texas*, 2025 WL 1414332, at *8. She voted to promulgate the Enforcement Document and immediately issued a defiant statement in response to President Trump's order to rescind it. *See* Kalpana Kotagal (@KotagalEEOC), X (Jan. 21, 2025, 3:10 PM), https://perma.cc/YD5T-84A3 (Exhibit N). Indeed, Commissioner Kotagal suggested that the *Defending Women* EO's interpretation of Title VII could "result in legal risk to employers." *Id.* She further declared that "LGBTQI+ workers—including transgender workers—are protected by federal law" and committed to "hold[ing] employers accountable if they discriminate or permit a hostile work environment on protected grounds." *See id.* Commissioner Kotagal later reaffirmed her belief that the Enforcement Document "continues" to guide EEOC's Title VII enforcement. *See* Kalpana Kotagal (@KotagalEEOC), X (Mar. 12, 2025, 10:12 AM), https://perma.cc/K4TV-B3WG (Exhibit O). Commissioner Kotagal has thus signaled an intent to wield her authority "against the specific conduct that plaintiff[s] plan to undertake[,] … meaningfully increas[ing] the risk of enforcement." *See Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 850 (6th Cir. 2024). In response, Plaintiff States must continue to expend time and resources to review, alter, and implement policies and training materials as necessary to reduce the risk of such enforcement actions under the Enforcement Document. *See, e.g.*, PI Br. 11 (collecting declarations).

6

And Plaintiff States need not provide a "precise dollar figure" for these costs, *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 600 (5th Cir. 2023), or quantify harm "down to the penny," *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 906 (6th Cir. 2024) (cited at Opp. 10). After all, "a loss of even a small amount of money" is a concrete injury for purposes of Article III, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017), and the resources Plaintiff States must expend to implement the Enforcement Document are "more than de minimis," *Rest. L. Ctr.*, 66 F.4th at 600 (quoting *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)). Compliance requires evaluating conflicting state laws, revising existing policies and processes, developing new trainings and materials, and distributing materials and trainings to employees. *See, e.g.*, ECF No. 33-3 ¶¶ 7-13; PI Br. 11 (collecting declarations). And that is to say nothing of the costs associated with responding to a charge. *See* Haynes Decl. ¶¶ 6-22. If anything, Defendants' request that Plaintiffs devote resources to finding the precise dollar figure of compliance expenses would perversely compound their unrecoverable costs.

Nor are Defendants correct (at 10) that Plaintiff States must prove that implementing the Enforcement Document is any more burdensome than implementing other EEOC directives. Even if Plaintiff States do not, for example, need "additional compliance staff" to implement the Enforcement Document's mandates, *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 237 (5th Cir. 2024), they still must divert resources from other priorities. Put differently, without the Enforcement Document, Plaintiff States would not need to spend time and resources implementing its mandates and could instead focus on existing obligations. Moreover, "where a 'new Rule requires at least some degree of preparatory analysis, staff training, and reviews of existing compliance protocols,' the injury-in-fact requirement is satisfied." *Texas*, 2025 WL 1414332, at *7. That's why "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *See Thunder Basin*, 510 U.S. at 220-21 (Scalia, J., concurring in part).

7

*Third*, Defendants cannot avoid the most basic standing principle under the APA: As "object[s] of" the "regulatory action," Plaintiff States have standing to challenge it. *See Tennessee v. EEOC*, 129 F.4th at 457-58. Defendants do not dispute that Title VII does not authorize the Enforcement Document's gender-identity based accommodations; the United States has adopted essentially the same legal interpretation of Title VII that Plaintiff States advance here. *See* Opp. 1, 4, 7. Instead, they argue that the Enforcement Document does not regulate employers, casting it as "merely … explain[ing] case law applying Title VII rather than impos[ing] new rules of employer conduct." *Id.* 11 n.3. But that is just an argument that the Enforcement Document is not reviewable final agency action. *See Bennett*, 520 U.S. at 177-78. And, as explained below, the Enforcement Document establishes "rights and obligations," and "legal consequences will flow" from its mandates—just like its predecessors—meaning it is subject to review. *Id.*

*Finally*, Defendants argue that, even if Plaintiff States have standing to sue the EEOC and its commissioners, they "cannot establish … any imminent harm traceable to DOJ" because it "disclaim[ed] the very interpretations to which the States object." Opp. 11-12. But "[j]urisdiction, including standing, is assessed under the facts existing when the complaint is filed." *ACLU of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004) (cleaned up). And at the time Plaintiff States filed their complaint, DOJ was operating under President Biden's Executive Order to apply *Bostock* as broadly as possible, *see Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*, Exec. Order No. 13,988, 86 Fed. Reg. 7023, 7023 (Jan. 20, 2021)—which DOJ did, *see, e.g.*, Pamela S. Karlan, Principal Deputy Assistant Attorney General, Civ. Rts. Div., U.S. Dep't of Justice, Memorandum, *Application of* Bostock v. Clayton County *to Title IX of the Education Amendments of 1972* (Mar. 26, 2021), https://perma.cc/X9D6-ZG9Y (extending *Bostock* to require gender-identity accommodations under non-discrimination statutes beyond Title VII). So a new DOJ position that exists at the time this motion for summary judgment is briefed does not bear on whether Plaintiff States had standing to

seek vacatur and further relief at the outset of this action. *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 n.3 (5th Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.4 (1992)); *see Texas*, 2025 WL 1414332, at *8. DOJ has not asserted that its position switching renders Plaintiff States' claims against it moot. But even if it had, the documented policy swings from administration to administration on the issues here weigh against the typical "solicitude" afforded to government entities. *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019).

### B. The Enforcement Document is final agency action.

Defendants do not dispute (at 12-16) that the Enforcement Document "mark[s] the consummation" of EEOC's decision-making process. *See Bennett*, 520 U.S. at 177-78. Rather, Defendants argue that the admittedly flawed Enforcement Document that they are fighting to preserve has no "legal effect." *See* Opp. 12 (citation omitted). But, just like EEOC's prior guidance documents imposing gender-identity accommodations, "legal consequences will flow" from the Enforcement Document. *See Tennessee I*, 615 F. Supp. 3d at 830-35 (citation omitted). The Court should reject Defendants' attempt to evade review. States' Br. 15-16.

Defendants point to boilerplate statements—e.g., "[n]othing in this document should be understood to prejudge the outcome of a specific set of facts," and promising to evaluate on a "case-by-case basis"—as proof that the Enforcement Document does "not have the force and effect of law." Opp. 12 (citations omitted). But the Enforcement Document's "boilerplate disclaimer" does not "prevent the Court from holding that" it is final agency action. *Texas*, 2025 WL 1414332, at *6. For example, EEOC's prior gender-identity mandates also had disclaimers. *See Tennessee I*, 615 F. Supp. 3d at 831. And as this Court explained, those "self-serving labels are not controlling." *Id.* Indeed, a "guidance document can constitute a final agency action 'even if the document contains boilerplate denying its legal effect.'" *Neese v. Becerra*, No. 2:21-cv-163, 2022 WL 1265925, at *9 (N.D. Tex. Apr. 26, 2022). The Court must consider the "practical effects of an agency's decision … , regardless of

9

how it is labeled." *Tennessee I*, 615 F. Supp. 3d at 831 (citation omitted). And the Enforcement Document establishes EEOC's position that an employer requiring all employees to use restrooms, attire, and pronouns that correspond with their sex is "harassing conduct." *See* ECF No. 1-2 at 17-18.

Defendants respond that harassing conduct "can, but does not necessarily always, constitute or contribute to unlawful harassment," and therefore the Enforcement Document does "not make binding determinations about whether specific conduct is unlawful." Opp. 13 (emphasis removed) (citations omitted). According to Defendants, that distinguishes this case from *Tennessee I*, because the guidance document there took "a firm position" that non-compliance with its gender-identity mandates "necessarily constitute[d] impermissible sex discrimination." *Id.* at 13-14. But it is beside the point that not all "harassing conduct" is *per se* unlawful harassment. The "pragmatic" impact of the Enforcement Document is to articulate EEOC's view that longstanding and widespread workplace policies are "harassing," suggesting they will often subject an employer to liability. Put differently, the Enforcement Guidance "broadly condemns the employment practices" Plaintiff States implement. *See Texas v. EEOC*, No. 2:21-cv-194-Z, 2022 WL 22869778, at *5 (N.D. Tex. May 26, 2022). "[I]n practical effect," the Enforcement Document thus "requires employers to comply with its stated positions to avoid liability." *Tennessee I*, 615 F. Supp. 3d at 833. Indeed, the Enforcement Document is "binding as a practical matter because private parties can rely on it as a norm or safe harbor by which to shape their actions," *Texas v. EEOC*, 933 F.3d 433, 444 (5th Cir. 2019) (cleaned up), just as Commissioner Kotagal recently instructed, *see* Exhibit O. At the same time, it tells employers "how to avoid liability, thereby creating legal consequences." *See Tennessee II*, 104 F.4th at 599.

Defendants' other responses are equally unavailing. Contra Defendants (at 14), that a document "supersedes and replaces" multiple prior guidance documents signals the agency's practical intent to provide new directions to staff. *See id.* (quotation marks omitted). That is even more true here given that the Enforcement Document was promulgated by a majority vote after notice-and-

10

comment, which EEOC reserves for "significant guidance document[s]" that "set[] forth the Commission's position on a legal principle for the first time or changes the Commission's legal position on any issue." *See* 29 C.F.R. §§ 1695.2(d), 1695.6. Indeed, because the Enforcement Document purports to state "existing requirements under the law" and "communicates the Commission's position on important legal issues," ECF No. 1-2 at 2, "how could EEOC investigators and staff not consider [it] binding?" *Texas v. EEOC*, 2022 WL 22869778, at *5. Commissioner Kotagal certainly holds that the Enforcement Document "continues" to guide Title VII enforcement, and she has signaled her intent to act in accordance with it. *Supra* at 6. The Enforcement Document at the very least "binds EEOC staff to an analytical method in conducting Title VII investigations," which is enough for final agency action. *Texas v. EEOC*, 933 F.3d at 443. Indeed, two courts have already rejected EEOC's arguments that the Enforcement Document is "non-binding." *See Cath. Benefits Ass'n v. Burrows*, 732 F. Supp. 3d 1014, 1026 (D.N.D. 2024); *Texas*, 2025 WL 1414332, at *5-6.

Finally, that EEOC lacks authority to promulgate substantive rules or initiate litigation against States does not mean that legal consequences do not flow from the Enforcement Document. Opp. 15-16. Rather, EEOC's promulgating a rule exceeding its authority is a basis for holding that rule unlawful. *See* States' Br. 22. And, as explained, EEOC has pre-litigation, investigative enforcement authority that can impose significant burdens on regulated employers. *Supra* at 5-6. At bottom, the Court should not credit Defendants' head-scratching claim that EEOC underwent notice-and-comment to promulgate a document substantively identical to a prior regulation that was invalidated for failing to clear that procedural hurdle, all so that the resulting Enforcement Document would have no legal effect. Rather, considering the Enforcement Document's text, its practical effects, and EEOC's history of attempting to impose the gender-identity accommodations therein, the Court should find that Plaintiff States' challenge is justiciable. *See Texas*, 2025 WL 1414332, at *4-6.

## II. The Enforcement Document Is Unlawful.

The Enforcement Document's gender-identity based mandates have no basis in Title VII and exceed EEOC's limited power to craft procedural rules. States' Br. 16-22; *Texas*, 2025 WL 1414332, at *10-13. The Enforcement Document's mandates also are not the product of reasoned decision-making. States' Br. at 22-23. "[T]he position of the United States" is now the same, at least regarding whether Title VII authorizes the Enforcement Document' gender-identity based accommodations. *See* Opp. 4-5. And, in any event, Defendants have forfeited any arguments on the merits by declining to respond to them. *Adkins v. Marathon Petrol. Co., LP*, 105 F.4th 841, 854 (6th Cir. 2024). Thus, the Court should hold the Enforcement Document's interpretation of Title VII "unlawful" and "set aside" the gender-identity based mandates that flow from it. *See* 5 U.S.C. § 706(2)(A), (C).

## III. The States Are Entitled To Vacatur, Declaratory Relief, And A Permanent Injunction.

Defendants notably do not contest that if Plaintiff States's claims are justiciable they are entitled to "declaratory relief and vacat[ur]" of the portions of the Enforcement Document imposing gender identity-based workplace accommodations. Opp. 16-17. On the other hand, Defendants argue that the Proposed Order's mention of "sexual orientation" stretches relief beyond "plaintiff[s'] particular injury." *Id.* at 17 (quoting *Gill v. Whitford*, 585 U.S. 48, 73 (2018)). The Enforcement Document announces its bathroom-access, dress code, and pronoun-use mandates in a section identifying allegedly harassing conduct based on sexual orientation *and* gender identity. *See* Dkt 1-2 at 17-18. The Texas district court thus held that portions of the Enforcement Document related to sexual orientation were equally "contrary to law" and subject to vacatur. *See Texas*, 2025 WL 1414332, at *16. In any event, the key point, which Defendants accept, is that Plaintiff States are entitled to declaratory relief and vacatur with respect to bathroom, dress code, and pronoun mandates.

Even if vacatur and declaratory relief protects Plaintiff States' interests, "a broader injunction is necessary to provide complete relief." *See Texas v. Cardona*, 743 F. Supp. 3d 824, 897 (N.D. Tex.

2024). EEOC "has enacted similar guidance in the past and may attempt to do so again as an end-run to the Court's relief." *Id.* To avoid that situation, it is appropriate for the Court to craft a "carefully tailored" injunction "pertain[ing] only to the Guidance Document[] in this case, along with any other future agency action … that rel[ies] on the errant" Title VII interpretation declared unlawful. *Id.* And given its authority to enforce Title VII, 42 U.S.C. § 2000e-5(f)(1), such relief may run against DOJ.

## CONCLUSION

The Court should grant Plaintiff States' motion for summary judgment, declare the Enforcement Document's challenged interpretations of Title VII and its gender identity-based accommodations unlawful, vacate those portions of the Guidance Document, and permanently enjoin EEOC and other responsible officials from enforcing the Enforcement Document's unlawful interpretations of Title VII and its gender identity-based accommodations against Plaintiff States.

Dated: May 16, 2025                                   Respectfully Submitted,

                                                      */s/ Harrison Gray Kilgore*
                                                      STEVEN J. GRIFFIN
                                                        Senior Counsel for Strategic Litigation
                                                      HARRISON GRAY KILGORE
                                                        Strategic Litigation Counsel and
                                                        Assistant Solicitor General
                                                      Office of the Tennessee Attorney General
                                                      P.O. Box 20207
                                                      Nashville, Tennessee 37202
                                                      (615) 741-8726
                                                      Steven.Griffin@ag.tn.gov
                                                      Harrison.Kilgore@ag.tn.gov
                                                      *Counsel for Plaintiff the State of Tennessee*

STEVE MARSHALL
  Attorney General

/s/ Edmund G. LaCour, Jr.
EDMUND G. LACOUR, JR.*
  Solicitor General
OFFICE OF THE ALABAMA
ATTORNEY GENERAL
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov
Counsel for Plaintiff State of Alabama

TIM GRIFFIN
  Attorney General

/s/ Autumn Hamit Patterson
AUTUMN HAMIT PATTERSON
  Solicitor General
OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-6302
Autumn.Patterson@arkansasag.gov
Counsel for Plaintiff State of Arkansas

THEODORE E. ROKITA
  Attorney General

/s/ James A. Barta
JAMES A. BARTA*
  Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
INDIANA
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, Indiana 46204
(317) 232-0709
James.Barta@atg.in.gov
Counsel for Plaintiff State of Indiana

TREG TAYLOR
  Attorney General

/s/ Cori Mills
CORI MILLS*
  Deputy Attorney General, Civil Division
OFFICE OF THE ALASKA ATTORNEY GENERAL
Alaska Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501
(907) 465-2132
Cori.Mills@alaska.gov
Counsel for Plaintiff State of Alaska

CHRISTOPHER CARR
  Attorney General

/s/ Stephen Petrany
STEPHEN PETRANY*
  Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
GEORGIA
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3408
Spetrany@law.ga.gov
Counsel for Plaintiff State of Georgia

BRENNA BIRD
  Attorney General

/s/ Eric H. Wessan
ERIC H. WESSAN*
  Solicitor General
OFFICE OF THE IOWA ATTORNEY GENERAL
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
Eric.Wessan@ag.iowa.gov
Counsel for Plaintiff State of Iowa

14

KRIS W. KOBACH
  Attorney General

/s/ James Rodriguez
JAMES RODRIGUEZ*
  Deputy Attorney General
OFFICE OF THE KANSAS ATTORNEY GENERAL
120 SW 10th Ave.
Topeka, KS 66612
(785) 296-7109
Jay.Rodriguez@ag.ks.gov
*Counsel for Plaintiff State of Kansas*


LYNN FITCH
  Attorney General

/s/ Justin L. Matheny
Justin L. Matheny*
  Deputy Solicitor General
OFFICE OF THE MISSISSIPPI ATTORNEY
GENERAL
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3825
Justin.Matheny@ago.ms.gov
*Counsel for Plaintiff State of Mississippi*


MICHAEL T. HILGERS
  Attorney General

/s/ Lincoln J. Korell
LINCOLN J. KORELL*
  Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
NEBRASKA
2115 State Capitol
Lincoln, Nebraska 68509
lincoln.korell@nebraska.gov
*Counsel for Plaintiff State of Nebraska*


RUSSELL COLEMAN
  Attorney General

/s/ Justin D. Clark
JUSTIN D. CLARK*
  Civil Chief
AARON SILLETTO*
  Executive Director, Office of Civil and Envi-
ronmental
KENTUCKY OFFICE OF THE ATTORNEY
GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Justind.Clark@ky.gov
Aaron.Silletto@ky.gov
*Counsel for Plaintiff Commonwealth of Kentucky*


ANDREW BAILEY
  Attorney General

/s/ Joshua M. Divine
JOSHUA M. DIVINE*
  Solicitor General
MISSOURI ATTORNEY GENERAL'S OFFICE
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
josh.divine@ago.mo.gov
*Counsel for Plaintiff State of Missouri*


DAVE YOST
  Attorney General

/s/ T. Elliot Gaiser
T. ELLIOT GAISER*
  Solicitor General
OFFICE OF THE OHIO ATTORNEY GENERAL
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
thomas.gaiser@ohioago.gov
*Counsel for the State of Ohio*

15

ALAN WILSON
  Attorney General

/s/ Thomas T. Hydrick
THOMAS T. HYDRICK*
  Assistant Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
OF SOUTH CAROLINA
1000 Assembly Street
Columbia, SC 29201
(803) 734-4127
Thomashydrick@scag.gov
*Counsel for Plaintiff State of South Carolina*


DEREK BROWN
  Attorney General

/s/ Stanford Purser
STANFORD PURSER*
  Deputy Solicitor General
UTAH ATTORNEY GENERAL'S OFFICE
160 East 300 South, 6th floor
PO Box 140856
Salt Lake City, UT 84114-0856
(801) 366-0100
Spurser@agutah.gov
*Counsel for Plaintiff State of Utah*


JOHN B. MCCUSKEY
  Attorney General

/s/ Michael R. Williams
MICHAEL R. WILLIAMS*
  Solicitor General
OFFICE OF THE WEST VIRGINIA ATTORNEY
GENERAL
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
(304) 558-2021
Michael.R.Williams@wvago.gov
*Counsel for Plaintiff State of West Virginia*


MARTY J. JACKLEY
  Attorney General

/s/ Jonathan K. Van Patten
JONATHAN K. VAN PATTEN *
  Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
STATE OF SOUTH DAKOTA
1302 E. Hwy. 14, Suite #1
Pierre, SD 57501
(605) 773-3215
Jonathan.Vanpatten@state.sd.us
*Counsel for Plaintiff State of South Dakota*


JASON S. MIYARES
  Attorney General

/s/ Kevin M. Gallagher
KEVIN M. GALLAGHER*
  Principal Deputy Solicitor General
VIRGINIA ATTORNEY GENERAL'S OFFICE
202 North 9th Street
Richmond, Virginia 23219
(805) 786-2071
kgallagher@oag.state.va.us
*Counsel for the Commonwealth of Virgini*

**\* Admitted Pro Hac Vice**

16

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2025, a true and correct copy of the foregoing document was

served via the Court's electronic filing system to the following counsel of record.

Jacob S. Siler
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 353-4556
Jacob.s.siler@usdoj.gov
*Counsel for Defendants*

*/s/ Harrison Gray Kilgore*
HARRISON GRAY KILGORE